**Jerome WALKER, Petitioner-Appellant,**

v.

**John L. WELDON, Warden,
Respondent-Appellee.**

No. 83–8803.

United States Court of Appeals,
Eleventh Circuit.

Oct. 18, 1984.

James C. Bonner, Jr., Univ. of Georgia School of Law, Prisoner Legal Counseling Project, Athens, Ga., for petitioner-appellant.

Janice G. Hildenbrand, Mary Beth Westmoreland, Asst. Attys. Gen., Atlanta, Ga., for respondent-appellee.

Before KRAVITCH and CLARK, Circuit Judges, and ALLGOOD *, District Judge.

ALLGOOD, District Judge:

Appellant, Jerome Walker, was convicted after trial by jury in the Superior Court of

---

* Honorable Clarence W. Allgood, U.S. District Judge for the Northern District of Alabama, sitting by designation.

Fulton County, Georgia for the offense of burglary and received a sentence of twenty years which he is now serving. Appellant's conviction was affirmed in the Court of Appeals of Georgia, *Walker v. State*, 156 Ga.App. 478, 274 S.E.2d 680 (1980). Walker initiated this habeas corpus action in the United States District Court for the Northern District of Georgia. On direct appeal and in the instant proceeding appellant contends that his right not to be placed twice in jeopardy for the same offense has been violated.[1] The protection against double jeopardy provided for in the Fifth Amendment was made binding on the states by the adoption of the Fourteenth Amendment. *Illinois v. Somerville*, 410 U.S. 458, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973).

After concluding that state remedies had been exhausted, the district court considered the merits of the petition for habeas corpus filed by the appellant. The only issue presented to the district court was appellant's contention that his retrial after a mistrial had been declared deprived him of his right to be protected against double jeopardy. The district court referred the petition to a magistrate. The magistrate appropriately concluded that no evidentiary hearing was necessary and proceeded to address the merits of the petition for habeas corpus based upon the state court record. The magistrate recommended that relief be denied. The recommendation was accepted by the district court and the petition for habeas corpus was denied. The district court, however, issued a certificate of probable cause and authorized appellant to proceed in forma pauperis.

After examining the record and considering the appropriate authorities, we agree with the trial judge, the Court of Appeals of Georgia and the United States District Court for the Northern District of Georgia and affirm the denial of habeas corpus.

A grand jury for Fulton County, Georgia indicted Walker for the offense of burgla-ry. Walker's jury trial commenced on December 3, 1979. Walker's trial jury was selected and sworn at 12:10 p.m. on December 3, 1979. Court was recessed for lunch and reconvened at 1:10 p.m. The presentation of the evidence was completed at 4:00 p.m. on December 3rd and the jury was excused until 9:30 a.m. the following morning. Closing arguments were completed, the court's instructions to the jury were completed, and the case was submitted to the jury for its deliberation at 11:00 a.m. on December 4th.

The first of four notes was received by the court after the jury had been in deliberation for about an hour. This note was to the effect that the jury was deadlocked. At 12:00 noon on December 4th the court called the jury to the courtroom and recessed for lunch. At approximately 5:20 p.m. on December 4th the court received still another note from the jury reporting that it was deadlocked. The note received by the court at 5:20 p.m. on December 4th was signed by all twelve jurors and the court was advised that the jury was "hopelessly deadlocked." After receiving four notes from the jury, each of which reported deadlocked and particularly after receiving a note signed by all twelve jurors, the jury was brought into the courtroom and given an *Allen* charge.[2]

The transcripts of the state proceedings reflect the following chronology. After deliberating approximately an hour on December 4th, the foreman of the jury sent the judge a note which read, "We are deadlocked at 6–6. Have you a suggestion?" After a lunch break the court recharged the jury on reasonable doubt and related principles; the jury resumed its deliberations at approximately 1:25 p.m. At 2:05 p.m. the foreman sent the court a second note: "We are hopelessly deadlocked at 7–5." At 3:10 p.m. the foreman sent the court a third note: "Judge Holt: We are absolutely deadlocked at 9–3 for acquittal.

---

1. The text of the double jeopardy clause of the Fifth Amendment reads, "Nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb."

2. *Allen v. United States*, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896).

All have agreed they would not yield their convictions no matter how much time is spent in discussion." An hour later at 4:05 p.m. the foreman delivered to the trial judge the last of four notes: "Judge Holt: we are absolutely and hopelessly deadlocked. A unanimous decision is an impossibility." This note was signed by all twelve jurors. It was at this time that the trial judge gave the *Allen* charge to the jury and sent them back for further deliberations. After a short time, the court adjourned the jury for the night. The following morning, after the jury had deliberated for approximately an hour and twenty minutes, the trial court advised counsel that he intended to call the jury back to the courtroom and if they had not reached a verdict, declare a mistrial on his own motion. After deliberating for approximately an hour and a half on December 5th, the jury was returned to the courtroom. In response to the court's inquiry as to whether the jury had been able to reach a verdict, the foreman replied: "Your Honor, we have reached an absolute impasse." The court then inquired if it was the same as it was yesterday and the foreman replied in the affirmative and added, "We are unable to reach a conclusion." The court then stated, "I will now declare a mistrial."

Prior to the commencement of the second trial which resulted in appellant's conviction, defense counsel made a motion to dismiss on the grounds that the second prosecution would twice put the appellant in jeopardy. The denial of appellant's motion to dismiss on double jeopardy grounds is the issue now presented in this habeas action.

The law in this case was established in 1829 in the opinion authored by Mr. Justice Story speaking for the court in *United States v. Perez*, 9 Wheat, 579, 580, 6 L.Ed. 165:

> The prisoner, Joseph Perez, was put upon trial for a capital offense, and the jury, being unable to agree, were discharged by the court from giving any verdict upon the indictment, without the consent of the prisoner, or of the attorney for the United States. The prisoner's counsel, thereupon, claimed his discharge as of right, under these circumstances; and this forms the point upon which the judges were divided. The question therefore, arises, whether the discharge of the jury by the court from giving any verdict upon the indictment, with which they were charged, without the consent of the prisoner, is a bar to any future trial for the same offense. If it be, then he is entitled to be discharged from custody; if not, then he ought to be held in imprisonment until such time trial can be had. We are of opinion that the facts constitute no legal bar to a future trial. The prisoner has not been convicted or acquitted, and may again be put upon his defense. We think that in all cases of this nature, the law has invested courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. They are to exercise a sound discretion on the subject; and it is impossible to define all the circumstances which would render it proper to interfere. To be sure, the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes; and, in capital cases especially, courts should be extremely careful how they interfere with any chances of life, in favor of the prisoner. But, after all, they have the right to order the discharge; and the security which the public have for the faithful, sound and conscientious exercise of this discretion, rests in this, as in other cases, upon the responsibility of the judges, under their oaths of office. We are aware that there is some diversity of opinion and practice on this subject, in the American courts; but, after weighing the question with due deliberation, we are of opinion that such a discharge constitutes no bar to further proceeding and gives no right of exemption to the prisoner from being again put upon trial. A cer-

tificate is to be directed to the circuit court in conformity to this opinion.

This simple straight forward explanation of the reason for permitting a second trial after a jury has been discharged because of their inability to reach a unanimous verdict has not been improved upon in the intervening years. Scholars, lawyers and judges have analyzed, reexamined and interpreted the language of *Perez, supra,* but no statement of the principle involved has ever been made with more clarity and more understanding than the quoted portion of Mr. Justice Story's opinion.

The broad spectrum of a second trial following the declaration of a mistrial by the trial judge was examined by the Supreme Court in *Arizona v. Washington,* 434 U.S. 497, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978). In discussing the situations in which a second trial is scheduled following the declaration of a mistrial and with reference to a mistrial declared after the trial court had determined that the jury was unable to reach a verdict, the Court said (434 U.S. 509, 98 S.Ct. 832):

> At the other extreme is the mistrial premised upon the trial judge's belief that the jury is unable to reach a verdict, long considered the classic basis for a proper mistrial. The argument that a jury's inability to agree establishes reasonable doubt as to the defendant's guilt, and therefore requires acquittal, has been uniformly rejected in this country. Instead, without exception, the courts have held that the trial judge may discharge a genuinely deadlocked jury and require the defendant to submit to a second trial. This rule accords recognition to society's interest in giving the prosecution one complete opportunity to convict those who have violated its laws.

> Moreover, in this situation there are especially compelling reasons for allowing the trial judge to exercise broad discretion in deciding whether or not "manifest necessity" justifies a discharge of the jury. On the one hand, if he discharges the jury when further deliberations may produce a fair verdict, the defendant is deprived of his "valued right to have his trial completed by a particular tribunal." But if he fails to discharge a jury which is unable to reach a verdict after protracted and exhausting deliberations, there exists a significant risk that a verdict may result from pressures inherent in the situation rather than the considered judgment of all the jurors. If the retrial of the defendant were barred whenever an appellate court views the "necessity" for a mistrial differently from the trial judge there would be a danger that the latter, cognizant of the serious societal consequences of an erroneous ruling, would employ coercive means to break the apparent deadlock. Such a rule would frustrate the public interest in just judgments. The trial judge's decision to declare a mistrial when he considers the jury deadlocked is therefore accorded great deference by a reviewing court.

The most recent consideration of this issue by the Supreme Court of the United States occurred in *Richardson v. United States,* — U.S. —, 104 S.Ct. 3081, 82 L.Ed.2d 242 (1984). Mr. Justice Rehnquist concluded the opinion of the court by stating:

> ... we reaffirm the proposition that a trial court's declaration of a mistrial following a hung jury is not an event that terminates the original jeopardy to which petitioner was subjected. The government, like the defendant, is entitled to a resolution of the case by a verdict from the jury, and jeopardy does not terminate when the jury is discharged because it is unable to agree. Regardless of the sufficiency of the evidence at petitioner's first trial, he has no valid double jeopardy claim to prevent his retrial.

The deliberation of the jury in the case before this court consumed more time than the actual trial of the case. On four occasions the jury reported to the court through its foreman that the jury was hopelessly deadlocked. On the last written note to the court the conclusion of all twelve jurors was to the effect that the

[redacted]

jury was hopelessly deadlocked and could not reach a verdict. The exercise of discretion by the trial court in concluding that the jury was genuinely deadlocked should not be disturbed by a reviewing court, either on direct appeal or in a collateral attack.

The decision of the district court to deny the petition for habeas corpus filed by the appellant is therefore due to be and hereby is AFFIRMED.