[Nos. F005984, F006420. Fifth Dist. Oct. 6, 1987.]

THE PEOPLE, Plaintiff and Respondent, v.
SAMUEL ALFONSO WILLIAMS, JR., et al., Defendants and
Appellants.

[No. F008526. Fifth Dist. Oct. 6, 1987.]

In re SAMUEL ALFONSO WILLIAMS, JR., on Habeas Corpus.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for partial publication with the exception of part I and parts III through VII.

**COUNSEL**

Samuel Alfonso Williams, Jr., in pro. per., Kyle Gee, Richard Power and Frank O. Bell, Jr., State Public Defender, under appointments by the Court of Appeal, and Cynthia A. Thomas, Deputy Public Defender, and Richard L. Phillips for Defendants and Appellants and Petitioner.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, J. Robert Jibson and William G. Prahl, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**HAMLIN, J.**—Defendants Samuel Alfonso Williams, Jr., Dee Joe Mosley, and James Wiley were convicted after their first jury trial of robbery (Pen. Code, § 211)[1] and burglary (§ 459). The jury found true the allegations that defendants Williams and Wiley were armed with a firearm in violation of

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

section 12022, subdivision (a), and that defendant Mosley used a firearm in violation of section 12022.5 in committing the robbery and burglary. The jury was unable to reach a verdict on the charge of murder (§ 187) against any of the defendants; a mistrial was declared.

Following the second jury trial on the murder charge, the jury returned verdicts finding each defendant guilty of first degree murder and finding that defendant Mosley personally used a firearm in committing the murder.

All three defendants appealed from the ensuing judgments. On appeal, defendants contend the court committed *Wheeler*[2] error in the first trial. In addition, each defendant urges that his felony-murder conviction must be reversed because he was twice put in jeopardy for the underlying robbery and the trial court committed other prejudicial error, including its failure to sever defendants' trials as requested. We agree that *Wheeler* error requires reversal of defendants' convictions in the first trial, but we find defendants' contentions of prejudicial error in the second trial to be without merit and affirm the judgments in the second trial.

## THE FACTS

Mattie Adair was living in Bakersfield on Christmas Eve, 1984. She was spending that evening at home with her niece, Vanessa W. Her next-door neighbor, John Nunez, was also visiting. At some point late in the evening, Nunez decided to walk next door and pick up a present he was storing at his home for Adair. He left through the unlocked back door adjacent to the kitchen.

Shortly after Nunez left, Vanessa saw a shadow in the living room adjoining the front bedroom where she and Adair were sitting. Immediately after she stepped toward the door to check on what she had seen, a Black male wearing blue jeans, a beige ski jacket and a nylon stocking over his head and face walked into the bedroom. He was carrying a double-barreled, sawed-off shotgun. Two additional Black males followed the first into the room; each wore a nylon stocking to mask his face. One was dressed in a long, knee-length, tan leather jacket, black pants and well-shined shoes. The third man wore a waist-length leather jacket and sneakers. This third individual spent most of his time searching other parts of the house. Only the gunman and the male wearing the knee-length jacket remained in the bedroom.

As soon as the three men walked into the bedroom, they asked for money and jewelry. Vanessa complied; she emptied her pockets and the men

---

[2] *People* v. *Wheeler* (1978) 22 Cal.3d 258 [148 Cal.Rptr. 890, 583 P.2d 748].

removed a gold chain she wore around her neck. Adair indicated she had nothing to give them, so they began searching the headboard, the area around the bed, and under the mattress. Their search revealed several items of jewelry, including a watch, bracelet and necklace. They also opened Adair's purse and removed the contents of her billfold.

The man wearing the long tan coat then ordered Vanessa to take off her clothing. While she was removing her blouse, another male returned to the bedroom and told the others that the Mexican was coming back. The three slowly stepped back out of the bedroom and then left the house.

They were gone for two to three minutes, during which time Vanessa heard what she thought was a backfire. After they came back into the home, Vanessa was once again instructed to remove her clothing. Unable to find additional items of jewelry, they tore the telephone cord from the wall and quickly left. Vanessa telephoned the police from a spare telephone Adair stored in the kitchen.

The body of John Nunez was found in Adair's back yard shortly after the police arrived. He had been fatally shot in the chest with a .22 caliber weapon.

DISCUSSION

ALLEGATION OF ERROR OCCURRING IN THE FIRST TRIAL

I.*

*Wheeler Error*

· · · · · · · · · · · · · · · · · · · ·

ALLEGATIONS OF ERRORS OCCURRING IN THE SECOND TRIAL

II.

*Double Jeopardy*

 Each defendant attacks his conviction of felony murder in the second trial by raising claims of former jeopardy based upon the earlier robbery conviction. In propounding this contention, defendants rely on

---

\* See footnote, *ante,* page 398.

similar arguments and authority. They cite section 1023, which reads: "When the defendant is convicted or acquitted or has been once placed in jeopardy upon an accusatory pleading, the conviction, acquittal, or jeopardy is a bar to another prosecution for the offense charged in such accusatory pleading, or for an attempt to commit the same, or for an offense necessarily included therein, of which he might have been convicted under that accusatory pleading."

Defendants also rely upon the Fifth Amendment to the United States Constitution and California Constitution, article I, section 15 for the proposition that no one may twice be put in jeopardy for the same offense.

With this statutory and constitutional foundation laid, defendants begin constructing their syllogistic argument by relying on the general proposition that the double jeopardy clause "protects against a second prosecution for the same offense after conviction." (*North Carolina* v. *Pearce* (1969) 395 U.S. 711, 717 [23 L.Ed.2d 656, 665, 89 S.Ct. 2072].) They then insist that the felony murder and the underlying robbery are the same offense because they are necessarily based upon the same facts. Defendants therefore conclude that retrial on the felony murder violates the prohibition against double jeopardy.

■ The prohibition against being placed twice in jeopardy for the same offense is a product of the common law plea of former jeopardy, designed "principally as a restraint on courts and prosecutors." (*Brown* v. *Ohio* (1977) 432 U.S. 161, 165 [53 L.Ed.2d 187, 193, 97 S.Ct. 2221].) Building upon this common law heritage, the United States Supreme Court has developed a well-established jurisprudence around this constitutional protection.

■ The clause, as contained in the Fifth Amendment to the United States Constitution and as applied to the states through the Fourteenth Amendment (*Benton* v. *Maryland* (1969) 395 U.S. 784 [23 L.Ed.2d 707, 89 S.Ct. 2056]), has been interpreted to encompass "three separate constitutional protections." (*North Carolina* v. *Pearce; supra,* 395 U.S. at p. 717 [23 L.Ed.2d at p. 664].)

"The clause affords criminal defendants [the following] protections: It protects against a second prosecution for the same offense after acquittal, against a second prosecution for the same offense after conviction, and against cumulative punishment for the same offense." (Project, *Fifteenth Annual Review of Criminal Procedure: United States Supreme Court and Courts of Appeals 1984-1985* (1986) 74 Georgetown L.J. 499, 718-720, fns. omitted.)

■ The United States Supreme Court has articulated several policy justifications for the three constitutional protections. By prohibiting the prosecutorial machinery of the state from pursuing a retrial following acquittal or conviction, the double jeopardy clause "ensures that the State does not make repeated attempts to convict an individual, thereby exposing him to continued embarrassment, anxiety, and expense, . . ." (*Ohio* v. *Johnson* (1984) 467 U.S. 493, 498-499 [81 L.Ed.2d 425, 433, 104 S.Ct. 2536].) Similarly, the provision is reinforced by the concomitant policy against a prosecutorial dual bite of the apple, thus reducing "the risk of an erroneous conviction . . ." (*Id.* at p. 499.) Finally, double jeopardy is meant not only to preserve the integrity of final judgments (*Crist* v. *Bretz* (1978) 437 U.S. 28, 37 [57 L.Ed.2d 24, 32, 98 S.Ct. 2156]), but it is also designed to halt double punishments for the same crime by curtailing a court's sentencing discretion "to the limits established by the legislature." (*Ohio* v. *Johnson, supra,* at p. 499 [81 L.Ed.2d at p. 433].)

■ Based on the constitutional protections, defendants, in well-written and insightful briefs, formulate what they view as the watershed issue— whether felony murder and the underlying felony are the same offense for purposes of double jeopardy. ■ In discussing this issue, they refer this court to the controlling test developed in *Blockburger* v. *United States* (1932) 284 U.S. 299, 304 [76 L.Ed. 306, 309, 52 S.Ct. 180]: "The applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of a fact which the other does not." Although *Blockburger* was concerned with the constitutionality of multiple punishments, the court in *Brown* v. *Ohio* noted: "[i]f two offenses are the same under this test for purposes of barring consecutive sentences at a single trial, they necessarily will be the same for purposes of barring successive prosecutions." (*Brown* v. *Ohio, supra,* 432 U.S. at p. 166 [53 L.Ed.2d at p. 194].)

■ In applying this test, defendants refer to a potpourri of federal and state case law to support their contentions that robbery is a lesser included offense of felony murder, and therefore the two prosecutions of felony murder below involved the same offense, thus violating the protection against double jeopardy. In *Harris* v. *Oklahoma* (1977) 433 U.S. 682 [53 L.Ed.2d 1054, 97 S.Ct. 2912], for instance, the defendant was tried and convicted of robbery after a previous prosecution for felony murder based upon robbery; the earlier murder trial also resulted in a conviction. The Supreme Court held the later robbery trial unconstitutional: "When, as here, conviction of a greater crime, murder, cannot be had without conviction of the lesser crime, robbery with firearms, the Double Jeopardy Clause

bars prosecution for the lesser crime after conviction of the greater one." (*Ibid.* 433 U.S. at p. 682 [53 L.Ed.2d at p. 1056].)

Similarly, defendants rely heavily upon *Brown* v. *Ohio, supra,* 432 U.S. 161 in propounding their same-offense analysis. In *Brown,* the defendant was convicted of joyriding and subsequently tried and convicted of auto theft. The state courts of Ohio had earlier interpreted joyriding, a misdemeanor, as a lesser included offense of auto theft. Based upon this, the Supreme Court condemned the latter felony prosecution, and they found the order of trial at the state level inconsequential: "Whatever the sequence may be, the Fifth Amendment forbids successive prosecution and cumulative punishment for a greater and lesser included offense." (*Id.* at p. 169 [53 L.Ed.2d at p. 196]; *Illinois* v. *Vitale* (1980) 447 U.S. 410, 416-421 [65 L.Ed.2d 228, 235-238, 100 S.Ct. 2260]; and *State* v. *Thomas* (1971) 114 N.J. Super. 360 [276 A.2d 391, 395-396].)

Defendants also discuss *United States* ex rel. *Paul* v. *Henderson* (N.D.N.Y. 1982) 535 F.Supp. 677 (revd. on other grounds (2d Cir. 1983) 698 F.2d 589; cert. den. 464 U.S. 835 [104 S.Ct. 120, 78 L.Ed.2d 118]). There, petitioner was convicted of attempted robbery in his first trial, but the jury was unable to reach a verdict on the felony-murder count. A second trial followed and petitioner was found guilty of felony murder. He subsequently initiated federal habeas corpus proceedings, raising violations of double jeopardy.

The federal district court held that the petitioner's retrial for felony murder after his conviction on the attempted robbery charge in his first trial was barred by the Fifth Amendment protection against double jeopardy. The court relied almost exclusively on its determination under the rule of *Brown* v. *Ohio, supra,* 432 U.S. 161 that attempted robbery and felony murder were the same offenses and thus the second prosecution for felony murder was barred.

While the facts of *United States* ex rel. *Paul* v. *Henderson, supra,* 535 F.Supp. 677 are substantially the same as the facts here, the precedential value of *Paul* to defendants is nullified by the opinion of the United States Court of Appeals, Second Circuit, reversing the federal district court. To begin, the appellate court stated, "Assuming *arguendo* that this claim [of double jeopardy] has merit, it comes too late." After explaining its reasons for that conclusion, it stated in footnote 6: "We recognize that the petitioner did stand trial twice for the crime of felony murder. He was tried for felony murder initially in the four count indictment, and following the 'hung jury' was retried for that same offense. However, it is well-established law that a reprosecution following a mistrial does not violate the Double Jeopardy

Clause. [Citations.] Since the first trial never ended in a final determination of the petitioner's guilt or innocence, the jeopardy never terminated. [Citation.] Therefore, the defendant's retrial on the charge of felony murder did not subject him to *double* jeopardy." (698 F.2d at p. 592, fn. 6, italics in original.)

Although defendants' position is forcefully argued, we are not persuaded by any of the authority on which defendants rely. ■ When felony murder is the end to the prosecution's case, the means must necessarily include a reconstruction of the underlying felony. As stated in *People* v. *Motherwell* (1961) 195 Cal.App.2d 545, 563 [16 Cal.Rptr. 140]: " 'Where a first degree murder charge is based on the allegation that the homicide was committed in perpetration or attempted perpetration of one of the felonies enumerated in Penal Code [section] 189, proof of the independent felony is essential to a conviction of first degree murder [citation], and the elements of the independent offense must be proved . . . .' [Citation.]" (Cf. *State* v. *Enmund* (Fla. 1985) 476 S.2d 165.)

But this legal proposition cannot be determinative. Not only do defendants fail to note the procedural posture of the current case as juxtaposed to those cited by them, but they ignore the policy behind the double jeopardy prohibition.

*Brown* v. *Ohio, supra,* 432 U.S. 161, and *Illinois* v. *Vitale, supra,* 447 U.S. 410, are characterized by defendants as controlling authority. Yet interpretation based on selected statements cannot govern the result; blind adherence to general statements even in Supreme Court cases only contributes to the confusion currently infesting the decisional law on double jeopardy. *Brown* and *Vitale* are significantly distinct from the situation faced by defendants on this appeal. In *Brown,* the defendant pleaded guilty to the charge of joyriding and was sentenced to 30 days and a $100 fine. Thereafter, he was indicted on the greater charge of auto theft. A similar pattern of successive indictments for the lesser and more serious offenses also characterized the *Vitale* case.

This type of repetitive prosecutorial conduct is directly contrary to the policies inherent in the double jeopardy protection. Avoiding the emotional and financial burden on the accused, lessening humiliation and stigmatization, and preventing enhanced risk of convicting the innocent (*Arizona* v. *Washington* (1978) 434 U.S. 497, 503-504 [54 L.Ed.2d 717, 727, 98 S.Ct. 824])—all of these are paramount justifications supporting the prohibition against double jeopardy, and all are violated by the state's attempt to split a prosecution and try charges separately that should, because of a common factual transaction, rightfully be joined in one proceeding. *Brown, supra,*

432 U.S. 161, and *Vitale, supra,* 447 U.S. 410, involved such successive prosecutions, and each court's decision condemning the latter prosecution was quite appropriate given the facts then before it.

We, however, do not face such a scenario. At defendants' first trial in April 1985, the state sought convictions for burglary, robbery and felony murder. A conviction on the latter charge was made impossible by a deadlocked jury, and the trial court rightfully declared a mistrial on that count. (*Arizona* v. *Washington, supra,* 434 U.S. at p. 509 [54 L.Ed.2d at p. 730].) The state later initiated a retrial of the felony-murder charge. While defendants were undoubtedly forced to raise their swords and shields against the state once again, from a factual and policy perspective they did not stand in the shoes of the defendants in *Brown* and *Vitale.*

██ Here, the prosecution was not dilatory; it joined all appropriate counts in the first trial. The mistrial, however, interfered with the state's intention to convict. In such a situation, greater recognition is due "to society's interest in giving the prosecution one complete opportunity to convict those who have violated its laws." (*Arizona* v. *Washington, supra,* 434 U.S. at p. 509 [54 L.Ed.2d at p. 730]; *Richardson* v. *United States* (1984) 468 U.S. 317, 324 [82 L.Ed.2d 242, 250, 104 S.Ct. 3081].) Moreover, such a situation does not necessarily inconvenience defendants as demonstrated in *Brown* and *Vitale*; they do not face emotional trauma caused by multiple, lengthy trials. A continuation of the same proceeding after mistrial simply does not present the same degree of stigmatization and humiliation; indeed, such a retrial should be expected, as compared to the unknowing defendant who can only guess at what lies ahead when the state fails to join charges into one proceeding.

These differences in the policy impact are demonstrated by analogous cases in which the court concluded that a retrial following mistrial due to a hung jury does not violate the double jeopardy clause. (*Richardson* v. *United States, supra,* 468 U.S. 317, 324-325 [82 L.Ed.2d 242, 250]; *United States* v. *Brack* (7th Cir. 1984) 747 F.2d 1142, 1148; *Walker* v. *Weldon* (11th Cir. 1984) 744 F.2d 775, 777-779.) ██ Since Justice Story's opinion in *United States* v. *Perez* (1824) 22 U.S. (9 Wheat.) 579 [6 L.Ed. 165], courts have recognized a "manifest necessity" permitting the trial court to retry the defendant in order to meet the ends of justice and to allow the state "one complete opportunity to convict those who have violated its laws." (*Arizona* v. *Washington, supra,* 434 U.S. at p. 509 [54 L.Ed.2d at p. 730].) In such cases the state's interest in enforcing its laws and ensuring public order

outweighs the burden borne by the defendant who must once again face the prosecutorial machinery of the state.[4]

*Ohio* v. *Johnson, supra,* 467 U.S. 493, also provides a strong analogy. There, defendant was charged with four counts: murder, aggravated robbery, involuntary manslaughter, and grand theft. He pleaded guilty to the two lesser included offenses of manslaughter and grand theft. The trial court dismissed the additional counts, relying on the double jeopardy clause. The Supreme Court disagreed, finding no contravention of the policies underlying the constitutional protection when the state seeks to continue the prosecution of the greater offenses. Stressing the interest of the state and distinguishing *Brown* v. *Ohio, supra,* 432 U.S. 161, the court wrote: "We do not believe, however, that the principles of finality and prevention of prosecutorial overreaching applied in *Brown* reach this case. No interest of respondent protected by the Double Jeopardy Clause is implicated by continuing prosecution on the remaining charges brought in the indictment. . . . Respondent has not been exposed to conviction on the charges to which he pleaded not guilty, nor has the State had the opportunity to marshal its evidence and resources more than once or to hone its presentation of its case through a trial. . . . There simply has been none of the governmental overreaching that double jeopardy is supposed to prevent. On the other hand, ending prosecution now would deny the State its right to one full and fair opportunity to convict those who have violated its laws." (*Ohio* v. *Johnson, supra,* 467 U.S. at pp. 501-502 [81 L.Ed.2d at p. 435].)

Factual differences and policy justifications serve to distinguish *Brown* and *Vitale* from defendants' double jeopardy claim here. Defendants were tried and convicted of robbery in April of 1985; the jury was unable to reach a verdict on the felony-murder charge. ■ The trial in the following September sought only a conviction for felony murder. While proof of the underlying robbery was a necessary condition precedent to proof of the felony murder, defendants were not being reprosecuted for the underlying felony; they were not twice in jeopardy for the robbery. They were not charged with, and could not have been convicted of, robbery in the second trial. There is an important distinction between the admission of facts to prove the underlying felony for the purposes of felony murder and reprosecution for that underlying felony. This case involved the former, and therefore there was no violation of the constitutional prohibition.

----

[4] In addition to relying on the state's interest in enforcing its laws, the decisions allowing retrial after a hung jury also reason "that the protection of the Double Jeopardy Clause by its terms applies only if there has been some event, such as an acquittal, which terminates the original jeopardy." (*Richardson* v. *United States, supra,* 468 U.S. at p. 325 [82 L.Ed.2d at p. 251].) Hence, a mistrial results in a mere continuation of the jeopardy, thus prohibiting the invocation of that clause by a defendant.

III.-VII.*

. . . . . . . . . . . . . . . . . . . . .

The judgments in the first trial are reversed and the causes there involved are remanded to the trial court for further proceedings. The judgment in the second trial as to the sentence of defendant Williams is modified by striking the five-year enhancement based on his residential burglary conviction and the trial court is directed to prepare and forward to the appropriate authority an amended abstract of judgment reflecting such modification. Except as modified as to defendant Williams's sentence, the judgments in the second trial are affirmed. Williams's petition for writ of habeas corpus is denied.

Franson, P. J., and Martin, J., concurred.

Petitions for a rehearing were denied November 4, 1987, and appellants' petitions for review by the Supreme Court were denied January 20, 1988.

---

*See footnote, *ante,* page 398.