Filed 1/30/23  P. v. Stafford CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>  v.<br><br>ISAIAH JAMES STAFFORD,<br><br>  Defendant and Appellant. | B322534<br><br>Stanislaus County<br>Super. Ct. No. 1466458-02<br><br>ORDER MODIFYING OPINION<br>[NO CHANGE IN JUDGMENT] |

THE COURT:

It is ordered that the opinion filed on January 30, 2023, be modified as follows:

On page 1, the Judge's name, Ricardo Cardova, should be corrected to read Ricardo Cordova.

There is no change in the judgment.

_____

EGERTON, J.        LAVIN, Acting P. J.      RICHARDSON (ANNE K.), J.*

_____

\*      Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Filed 1/30/23  P. v. Stafford CA2/3 (unmodifed opinion)

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ISAIAH JAMES STAFFORD,<br><br>    Defendant and Appellant. | B322534<br><br>Stanislaus County<br>Super. Ct. No. 1466458-02 |

APPEAL from a judgment of the Superior Court of Stanislaus County.  Ricardo Cardova, Judge.  Affirmed.

Deborah L. Hawkins, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez, Lewis A. Martinez and William K. Kim, Deputy Attorneys General, for Plaintiff and Respondent.

The People charged Isaiah James Stafford with murder, assault, and attempted robbery. A jury convicted Stafford of assault, found he did not commit murder under an express malice theory, and was unable to agree unanimously whether he committed attempted robbery and murder under a felony murder theory. Stafford repeatedly moved for a mistrial, which the court eventually granted. The People retried the case under the felony murder theory, and the second jury convicted Stafford of first degree murder and attempted robbery. On appeal, Stafford contends double jeopardy principles barred the People from retrying the murder charge. He also argues he received ineffective assistance of counsel. We affirm.

## FACTS AND PROCEDURAL BACKGROUND

### 1. *Background*

Because the facts of the underlying offenses are not relevant to this appeal, we summarize them only briefly.

On the afternoon of December 11, 2013, Luisa Riley went to a restaurant to meet up with Stafford, whom she was dating. Stafford was not at the restaurant, so Riley walked around the area. She found Stafford sometime later in a nearby parking lot.

Riley asked Stafford what he was doing in the parking lot. Stafford replied he was going to buy "weed" and "do a come up," which Riley understood to mean he was going to steal something. Stafford had a gun. Lamarr Oldham, whom Stafford claimed was his cousin, was standing by himself next to a nearby dumpster.

Roy Randall and Damien Villavicencio drove up in a car and parked near where Riley and Stafford were standing. Stafford got into the backseat of the car. He left the door open and had his feet outside the car.

2

Stafford asked the men to show him the "weed." One of the men responded by asking Stafford to show him the money. Oldham slowly moved toward the car from a crouched position, and Randall and Villavicencio looked in his direction. Randall tried to drive away, but he crashed into a curb.

Stafford started shooting his gun, and Riley heard three gunshots coming from his direction. Oldham, who was now right beside Riley, started firing his gun at the car as well.

Stafford, Oldham, and Riley ran to Oldham's apartment, which was in a nearby complex. Police arrested them later that evening.

Randall suffered a gunshot wound to his forearm. Villavicencio suffered a gunshot wound to his chest, which was fatal.

The People charged Stafford with the first degree murder of Villavicencio (Pen. Code, § 187, subd. (a); count 1),[1] assault with a firearm on Randall (§ 245, subd. (a)(2); count 2), and two counts of attempted robbery (§§ 211, 664; counts 3, 4). The People also alleged various firearm enhancements.

## 2. *The first trial*

The People tried the case to a jury in 2019. At the close of evidence, the court instructed the jury that Stafford "has been prosecuted for murder under two theories: One, malice aforethought; and two, felony murder. Each theory of murder has different requirements . . . ."

The court gave the jury separate sets of verdict forms for "FIRST DEGREE MURDER . . . as charged in Count I," and "FELONY MURDER . . . as charged in Count I." The court also provided the jurors with sets of verdict forms for second degree

---

[1]     Statutory references are to the Penal Code.

3

murder, involuntary manslaughter, attempted robbery, and several other lesser included offenses.

After deliberating for less than a day, the foreperson informed the court the jury was not able to reach verdicts on "the first [count] of felony murder" as well as the attempted robbery counts. The foreperson handed the verdict forms to the court, noting he had "signed the forms of the verdicts that we all agree on, and we have left blank the ones that we have not agreed on."

The court met with counsel in chambers and told them the jurors "did not sign the felony murder verdict forms so that is what they are hung on. They did sign with respect to malice verdict, found him not guilty of first-degree murder, not guilty of second-degree murder, not guilty of involuntary manslaughter." The prosecutor remarked that the verdicts made sense because the "lesser[ ] [offenses] were included under [the] malice murder" theory, not the felony murder theory. The court noted the jury could still convict Stafford under the felony murder theory. Defense counsel stated he needed to research the issue.

After returning to the courtroom, the court instructed the jury to continue its deliberations. Stafford then moved "for a mistrial on the felony murder theory," which the prosecutor opposed. The court denied the motion.

About 45 minutes later, the jury indicated it had not made any progress. Stafford again moved for a mistrial. The prosecutor opposed the motion, arguing that the jury could still reach a verdict on the felony murder theory. The court denied Stafford's motion.

The court read the jurors CALCRIM No. 3551 and instructed them to continue their deliberations. Stafford made

a third motion for mistrial, arguing it was clear the jury was deadlocked on felony murder. The court again denied the motion.

Sometime later, the jury sent the court a note asking whether it could find Stafford guilty of felony murder without finding him guilty of attempted robbery. The court responded that the jury must find Stafford guilty of attempted robbery to find him guilty of felony murder.

The jury returned to the courtroom a few minutes after receiving the court's response. The foreperson informed the court the jury was at an "impasse and will not be able to reach a unanimous decision." The court told the jurors to continue deliberating the following day.

After the jurors left for the day, Stafford asked the court to record the not guilty verdicts and declare a mistrial. The court responded that it would record the verdicts the next day, and the jury would continue to deliberate only on felony murder and the attempted robbery counts. The court again denied Stafford's mistrial motion.

After deliberating for several more hours the next day, the jury informed the court it still could not come to an agreement on the outstanding counts. The court asked the foreperson: "It was . . . one of the theories under Count I, and then Counts III and IV that the jury wasn't able to decide on; is that right?" The foreperson responded, "Correct."

The jury returned the verdict forms to the court. The foreperson signed "not guilty" forms for "FIRST DEGREE MURDER . . . as charged in Count I," "SECOND DEGREE MURDER . . . as charged in Count I," and "INVOLUNTARY MANSLAUGHTER . . . a lesser included offense to Count I." The foreperson also signed a "guilty" verdict form on count 2

(assault with a firearm), which found true the allegation that Stafford personally used a firearm. The foreperson did not sign any verdict forms for "FELONY MURDER . . . as charged in Count I" or the attempted robbery counts.

The court asked the foreperson for the vote split "with respect to Count I, the felony murder count," as well as the attempted robbery counts. The foreperson responded that the jury was split 11 to 1, with the majority of jurors voting to convict on all three counts.

After the clerk read the verdicts, the court remarked: "With respect to the other theory for Count I, which was felony murder, I will declare a mistrial with respect to that particular count since it's clear to the Court that further deliberation would not assist the jury in reaching a verdict based on the representations of the foreperson." The court also declared a mistrial on the attempted robbery counts. The court set a hearing to reset the jury trial, and Stafford waived time.

**3.** *The second trial*

The People tried the murder and attempted robbery counts to a new jury in January 2020. After the parties rested, the court instructed the jury that the People charged Stafford with murder "under a theory of first degree felony murder." It did not instruct the jury on any other theories of murder.

The jury convicted Stafford of murder and two counts of attempted robbery. It also found true the allegations that Stafford aided and abetted the murder while "engaged in the commission of the crime of attempted robbery," and "personally and intentionally discharge[d] a firearm and proximately cause[d] great bodily injury to another person" during the offenses.

6

The court sentenced Stafford to an aggregate term of five years plus 50 years to life consisting of the following: 25 years to life for the murder (count 1), 25 years to life for the firearm enhancement on the murder count, the low term of two years for the assault (count 2), and the low term of three years for the firearm enhancement on the assault count. The court imposed two consecutive sentences of two years plus 25 years to life on the attempted robbery counts (counts 3 & 4), which it stayed under section 654.

Stafford timely appealed.

## DISCUSSION

1. ***Double jeopardy principles did not bar the People from retrying Stafford for murder***

Stafford argues his conviction for murder violates the double jeopardy clauses found in the federal and California constitutions. Specifically, he contends the jury in the first trial acquitted him of murder, which precluded the People from prosecuting him for murder in the second trial.

At the outset, we agree with the Attorney General that Stafford forfeited this issue by failing to raise it below. A defendant must affirmatively raise a claim of double jeopardy in the trial court to preserve the issue for appeal. (*People v. Gurule* (2002) 28 Cal.4th 557, 646.) Stafford did not enter a once-in-jeopardy plea[2] or otherwise raise the double jeopardy issue in the trial court. As a result, he has forfeited the issue

---

[2] "In order to present a double jeopardy defense at trial, a defendant must first have entered a special plea of 'former acquittal,' 'former conviction' or 'once in jeopardy.' " (*People v. Bell* (2015) 241 Cal.App.4th 315, 339; see §§ 1016, subds. (4), (5), 1020.)

7

on appeal.  Nevertheless, we will consider the merits of his arguments in order to forestall his derivative ineffective assistance of counsel claim.

The double jeopardy clauses of the Fifth Amendment to the United States Constitution and article I, section 15, of the California Constitution provide that no person may be tried more than once for the same offense.  (*People v. Aranda* (2019) 6 Cal.5th 1077, 1083 (*Aranda*).)  The double jeopardy clauses protect against " 'a second prosecution for the same offense following an acquittal or conviction . . . .' " (*People v. Anderson* (2009) 47 Cal.4th 92, 103–104.)  The double jeopardy clauses generally do not preclude the People from retrying a defendant if the jury fails to agree on a verdict and the court declares a mistrial.  (*Aranda,* at p. 1083.)

Stafford limits his double jeopardy arguments to the murder charge.  Murder is the "unlawful killing of a human being, or a fetus, with malice aforethought."  (§ 187, subd. (a).)  Malice may be either express or implied.  (§ 188, subd. (a).)  "Malice is express when there is manifested a deliberate intention to unlawfully take away the life of a fellow creature."  (§ 188, subd. (a)(1).)  Alternatively, a defendant may be guilty of murder under the felony murder rule, which "generally acts as a substitute for the mental state ordinarily required for the offense of murder."  (*People v. Patterson* (1989) 49 Cal.3d 615, 626, italics omitted.)  The felony murder rule "makes a killing while committing certain felonies murder without the necessity of further examining the defendant's mental state." (*People v. Chun* (2009) 45 Cal.4th 1172, 1182.)

The People charged Stafford with a single count of murder, but presented alternative theories to the jury in the first trial.

8

Under one theory—the malice theory—the People posited that Stafford was guilty of murder because he killed Villavicencio with express malice. Under the other theory—the felony murder theory—the People posited that Stafford was guilty of murder because Villavicencio was killed while Stafford was attempting to rob him.

As Stafford correctly points out, malice murder and felony murder are not separate crimes; instead, they are simply different ways of proving the single offense of murder. (*People v. Nakahara* (2003) 30 Cal.4th 705, 712.) As a result, in order to acquit Stafford of murder, the jury in the first trial had to find him not guilty under both of the prosecution's theories. The jury found Stafford did not commit express malice murder, but it was unable to reach a unanimous decision as to whether he committed murder under a felony murder theory. The jury, therefore, did not acquit Stafford of murder, and the prosecution was not barred from retrying him under the felony murder theory. (See *Aranda, supra*, 6 Cal.5th at p. 1083.)

Stafford's arguments to the contrary are premised on a misreading of the verdict forms in the first trial. The trial court gave the jury two sets of verdict forms for the murder charge: one set for the express malice theory, and one set for the felony murder theory. Hybrid verdict forms of this sort are permissible. (See *People v. Neely* (1993) 6 Cal.4th 877, 898.) Unfortunately, the verdict forms were not worded as precisely as they should have been. Unlike the felony murder forms, the malice theory forms did not explicitly state they were limited to a single theory of murder; instead, they referred to the crime of murder generally, without qualification.

Stafford maintains that by signing the not guilty verdict form related to the malice theory—which states the jury found him not guilty of "MURDER . . . as charged in Count I"—the jury in the first trial acquitted him of the crime of murder. If we were to view this particular verdict form in isolation, we might agree. Viewed in the context of the entire record, however, it is readily apparent the jury did not intend to acquit Stafford of murder.

"The touchstone of a jury verdict of acquittal is the jury's manifestation of a definite and final intent to acquit of the offense." (*Bigelow v. Superior Court* (1989) 208 Cal.App.3d 1127, 1134, accord *Aranda, supra*, 6 Cal.5th at p. 1093.) The jury must unequivocally indicate an intent to acquit to preclude the prosecution from retrying the defendant on the same charge. (*People v. Brown* (2016) 247 Cal.App.4th 211, 234.)

The jury did no such thing here. To the contrary, the foreperson repeatedly informed the court the jury could not reach a unanimous decision as to whether Stafford was guilty of murder under a felony murder theory. Consistent with those representations, the jury did not complete any of the verdict forms related to the felony murder theory. Moreover, at Stafford's request, the court declared a mistrial "[w]ith respect to the [felony murder] theory for Count I," which would have been unnecessary and nonsensical had the jury acquitted Stafford of murder. On this record, there is no doubt the jury did not intend to acquit Stafford of the crime of murder, despite the imprecise language in the malice murder verdict forms. Indeed, even Stafford seemed to recognize this fact, as he did not enter a once-in-jeopardy plea, object to the second trial, or claim the jury acquitted him of murder at any point prior to this appeal.

10

Stafford suggests that, whenever a jury unanimously rejects a theory of murder, it acts as a complete acquittal, even if the prosecutor presented multiple theories of the offense. He contends it would be fundamentally unfair to require jurors to reject unanimously all theories of murder in order to acquit, given jurors need not agree unanimously on a single theory in order to convict. We are not persuaded. In both situations—conviction and acquittal—the jurors must agree unanimously on the core question submitted to them: did the defendant commit murder. So long as at least one juror answers yes to that question under a valid theory, the jury has not acquitted the defendant of the offense.

Stafford also suggests his retrial was improper because a prosecutor cannot evade double jeopardy by retrying the defendant under a new theory following an acquittal. While we generally agree, that is not what happened here. Instead, the People retried Stafford under one of the theories presented to the jury in the first trial—felony murder. The second trial, therefore, was a continuation of the original prosecution, rather than an entirely new one. The double jeopardy clauses do not apply in this situation. (See *Yeager v. U.S.* (2009) 557 U.S. 110, 118 [retrial following a mistrial due to a hung jury is a continuation of the initial jeopardy and therefore not barred]; *People v. Williams* (1987) 195 Cal.App.3d 398, 408, fn. 4 ["a mistrial results in a mere continuation of the jeopardy, thus prohibiting the invocation of that clause by a defendant"]; *In re Dale S.* (1970) 10 Cal.App.3d 952, 956 [double jeopardy principles do not apply where a second proceeding is a continuation of the original proceeding].)

11

**2.    *Stafford did not receive ineffective assistance of counsel***

Stafford argues his trial counsel was constitutionally ineffective in failing to advise him to enter a once-in-jeopardy plea.

Under either the federal or state Constitution, the "benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceedings] cannot be relied on as having produced a just result." (*Strickland v. Washington* (1984) 466 U.S. 668, 686.)  To establish a claim for ineffective assistance of counsel, a defendant must prove by a preponderance of the evidence (1) that his lawyer's performance was deficient because it fell below an objective standard of reasonableness in all the circumstances; and (2) that absent those errors, a different outcome was reasonably probable, meaning a probability sufficient to undermine confidence in the outcome. (*People v. Cunningham* (2001) 25 Cal.4th 926, 1030.)

Stafford has not shown his lawyer's performance was deficient or that he suffered prejudice.  As we discussed above, double jeopardy principles did not bar the People from retrying Stafford for murder.  Defense counsel, therefore, was not required to advise Stafford to enter a once-in-jeopardy plea, which would have been futile.  For the same reasons, Stafford has not shown he suffered prejudice.  Accordingly, his ineffective assistance of counsel claim lacks merit.

**DISPOSITION**

We affirm the judgment.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

                       EGERTON, J.

We concur:

        LAVIN, Acting P. J.

        RICHARDSON (ANNE K.), J.*

---

 *     Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

13