[No. S044641. May 2, 1996.]

THE PEOPLE, Plaintiff and Respondent, v.
PAUL DOUGLAS FIELDS, Defendant and Appellant.

## COUNSEL

Peter A. Estern, under appointment by the Supreme Court, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, John R. Gorey, Robert Renner, Sanjay T. Kumar and Mitchell T. Keiter, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

LUCAS, J.*—We granted review to decide whether the constitutional prohibition against double jeopardy, or any of the statutory provisions implementing its protection, bar defendant's retrial on a greater offense on which jurors failed to reach agreement when, in the same proceeding, the jury returned a verdict of guilty on a separately charged lesser included offense. In resolving this issue we are called upon to reconcile an apparent tension between two distinct and well-established double jeopardy doctrines: the "implied acquittal" doctrine, under which the jury's verdict of guilty on a lesser included offense constitutes an implicit acquittal of the greater offense barring its retrial, and the doctrine of "manifest necessity" or "legal necessity" justifying retrial following discharge of a deadlocked jury.

As we explain, when, as occurred here, the trial court determines that jurors are genuinely deadlocked on the greater offense, an acquittal on that charge will not be implied by the jury's verdict of guilty on the lesser included offense. Unlike the situation in which the jury is merely silent with regard to the greater offense, when the jurors have expressed an inability to agree on the greater offense, their verdict of guilty on the lesser included offense cannot support an implication that they intended to acquit the accused of the greater offense.

Although we find the doctrine of implied acquittal inapplicable to this case, the question remains whether defendant was properly retried on the

*Retired Chief Justice of the Supreme Court sitting under assignment by the Acting Chairperson of the Judicial Council.

greater offense following the jury's deadlock on that charge. Here, the jury in the first trial rendered a verdict of guilty on the lesser included offense. The verdict was received by the trial court and recorded, and the jury was discharged. As a result of the first trial, defendant thus stood convicted of the lesser included offense. Under Penal Code section 1023,[1] as construed in *People* v. *Greer* (1947) 30 Cal.2d 589, 596-597 [184 P.2d 512], when an accused is convicted of a lesser included offense, the conviction bars a subsequent prosecution for the greater offense. We conclude that the rule of *Greer* applies to the circumstances presented here, notwithstanding the jury's deadlock on the greater offense.

The judgment of the Court of Appeal reversing defendant's conviction on the greater offense is therefore affirmed, albeit for a different reason than that given by the court in its opinion. (See *Davey* v. *Southern Pacific Co.* (1897) 116 Cal. 325, 329 [48 P. 117].)

## I.

While driving eastbound on Venice Boulevard in Los Angeles at over 70 miles per hour, defendant ran a red light and struck a car driven by Daniel Hernandez, who was proceeding through the intersection. Hernandez died as a result of the collision. After the accident, defendant staggered and his speech was slurred. He was taken to the hospital where his blood-alcohol level registered .16 percent.

In an amended multicount information, defendant was charged with six offenses: count I—gross vehicular manslaughter while intoxicated (§ 191.5, subd. (a)); count II—vehicular manslaughter while intoxicated (§ 192, subd. (c)(3)); count III—gross vehicular manslaughter (§ 192, subd. (c)(1)); count IV—driving under the influence and causing bodily injury (Veh. Code, § 23153, subd. (a)); count V—driving with a blood-alcohol level of .08 percent or more and causing bodily injury (Veh. Code, § 23153, subd. (b)); and count VI—driving with a suspended license. (Veh. Code, § 14601, subd. (a).) The information further alleged defendant had suffered three prior convictions within the meaning of section 667.5, subdivision (b). Defendant pleaded not guilty to all charges, and a trial by jury commenced.

The jury began deliberating on November 10, 1992. On November 13, 1992, the jury sent a note to the court indicating it could not agree on counts I and III. After ordering that the jury return to the courtroom, the trial court asked the foreman whether the jury had reached verdicts on the other four counts. When the foreman replied that it had, the court asked for the signed

---

[1]All further statutory references are to this code, unless otherwise noted.

verdict forms, and verdicts of guilty on counts II, IV, V, and VI were recorded.

After questioning the jurors regarding their deadlock, the trial court determined that further deliberations were warranted, and instructed the jury that it should continue to deliberate on counts I and III. Deliberations proceeded until November 17, 1992, at which time the court found that the jury was hopelessly deadlocked. With no objection from either party, the court declared a mistrial on counts I and III, and set a date for retrial on those charges. Judgment was entered against defendant on the remaining four counts and, after finding true the allegations of prior convictions, the court imposed a sentence totaling six years.

Defendant was rearraigned on an amended information charging counts I and III. Retrial on these offenses commenced on March 26, 1993, and following jury selection, the matter was transferred to a different judge. On its own motion, the trial court dismissed count III, gross vehicular manslaughter. The second jury returned a verdict of guilty on the remaining count, gross vehicular manslaughter while intoxicated. Defendant was sentenced to the upper term of ten years for the conviction, plus one year for each of the three allegations of prior felony conviction found true by the trial court. The court further ordered that the sentence imposed by the first trial court be stayed, the stay to become permanent upon completion of the service of sentence on count I.

The Court of Appeal reversed the conviction for gross vehicular manslaughter while intoxicated on the ground that defendant's retrial on that offense was barred by double jeopardy. Dismissing that charge against defendant, the Court of Appeal affirmed the judgment entered on the convictions and findings in the first trial, and reinstated the original sentence. We granted the People's petition for review.

II.

The double jeopardy clause of the Fifth Amendment to the United States Constitution guarantees that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb," and is made applicable to the states through the due process clause of the Fourteenth Amendment. (*Benton* v. *Maryland* (1969) 395 U.S. 784, 794 [23 L.Ed.2d 707, 715, 89 S.Ct. 2056].)

Protection against double jeopardy is also embodied in article I, section 15 of the California Constitution, which declares that "[p]ersons may not twice

be put in jeopardy for the same offense." As we reaffirmed in *Raven* v. *Deukmejian* (1990) 52 Cal.3d 336 [276 Cal.Rptr. 326, 801 P.2d 1077], the California Constitution is a document of independent force and effect that may be interpreted in a manner more protective of defendants' rights than that extended by the federal Constitution, as construed by the United States Supreme Court. (*Id.* at pp. 352-355; see Cal. Const., art. I, § 24 ["Rights guaranteed by this Constitution are not dependent on those guaranteed by the United States Constitution."]; *People* v. *Comingore* (1977) 20 Cal.3d 142, 145 [141 Cal.Rptr. 542, 570 P.2d 723]; *Bunnell* v. *Superior Court* (1975) 13 Cal.3d 592, 601 [119 Cal.Rptr. 302, 531 P.2d 1086]; *Curry* v. *Superior Court* (1970) 2 Cal.3d 707, 716 [87 Cal.Rptr. 361, 470 P.2d 345] [reaffirming *Cardenas* v. *Superior Court* (1961) 56 Cal.2d 273 [14 Cal.Rptr. 657, 363 P.2d 889, 100 A.L.R.2d 371], in which federal rule permitting mistrial on court's own motion rejected in light of decisions interpreting state Constitution's double jeopardy clause].) Our inquiry here is thus guided by the decisions announcing the minimum standards of double jeopardy protection under the Fifth Amendment, as well as the decisions interpreting the California Constitution and the statutory provisions implementing those constitutional protections. (*Stone* v. *Superior Court* (1982) 31 Cal.3d 503, 509-510 [183 Cal.Rptr. 647, 646 P.2d 809] (hereafter *Stone*).)

■ Under both the federal and state Constitutions, the double jeopardy clause "serves principally as a restraint on courts and prosecutors." (*Brown* v. *Ohio* (1977) 432 U.S. 161, 165 [53 L.Ed.2d 187, 193, 97 S.Ct. 2221]; see generally, Sigler, Double Jeopardy (1969) pp. 155-187 [double jeopardy limits discretion of prosecutor to initiate and pursue prosecution of criminal suspects].) In a frequently quoted passage in *Green* v. *United States* (1957) 355 U.S. 184, 187-188 [2 L.Ed.2d 199, 204-205, 78 S.Ct. 221, 61 A.L.R.2d 1119] (hereafter *Green*), the Supreme Court articulated, in 20th century terms, the purpose of the double jeopardy bar: "The underlying idea . . . is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty." Decisions under the double jeopardy clause of the California Constitution likewise recognize the defendant's interest in avoiding both the stress of repeated prosecutions and the enhanced risk of erroneous conviction. (See, e.g., *People* v. *Upshaw* (1974) 13 Cal.3d 29, 34 [117 Cal.Rptr. 668, 528 P.2d 756], quoting *People* v. *Valenti* (1957) 49 Cal.2d 199, 209 [316 P.2d 633] [purpose of constitutional provision against double jeopardy to prevent repeated harassment of defendant]; *Bryan* v. *Superior Court* (1972) 7 Cal.3d 575, 581 [102 Cal.Rptr. 831, 498 P.2d 1079]; *People* v. *Tideman* (1962) 57 Cal.2d 574, 585 [21 Cal.Rptr. 207, 370 P.2d 1007].)

■ The double jeopardy clause of the Fifth Amendment of the United States Constitution "protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense." (*North Carolina* v. *Pearce* (1969) 395 U.S. 711, 717 [23 L.Ed.2d 656, 664-665, 89 S.Ct. 2072], fns. omitted.) Based on these policies, the United States Supreme Court has recognized that, for double jeopardy purposes, an acquittal barring a second prosecution may be either express, or implied by a conviction on a lesser included offense when the jury was given the opportunity to return a verdict on the greater offense. (*Green, supra,* 355 U.S. at pp. 190-191 [2 L.Ed.2d at 205-206]; see also *Price* v. *Georgia* (1970) 398 U.S. 323, 328-329 [26 L.Ed.2d 300, 304-305, 90 S.Ct. 1757].) The so-called "implied acquittal" doctrine whereby "a verdict of guilty on a lesser included offense constitutes an implied acquittal of the greater offense of which the jury could have convicted the defendant" (*Stone, supra,* 31 Cal.3d at p. 511, fn. omitted) has long been recognized under California law as well. (See *People* v. *Gilmore* (1854) 4 Cal. 376, 376; *People* v. *Gordon* (1893) 99 Cal. 227, 229-230 [33 P. 901]; *In re Hess* (1955) 45 Cal.2d 171, 176 [288 P.2d 5]; *People* v. *Lohbauer* (1981) 29 Cal.3d 364, 372 [173 Cal.Rptr. 453, 627 P.2d 183]; *Stone, supra,* 31 Cal.3d. at p. 511.)

■ Distinct from the implied acquittal rule, and having "its own sources and logic" (*Richardson* v. *United States* (1984) 468 U.S. 317, 323 [82 L.Ed.2d 242, 250, 104 S.Ct. 3081]), the doctrine of manifest necessity justifies a retrial following jury deadlock. In a trial by jury, the defendant is deemed to have been placed in jeopardy when the jurors have been impaneled and sworn. (*Crist* v. *Bretz* (1978) 437 U.S. 28, 38 [57 L.Ed.2d 24, 33, 98 S.Ct. 2156].) Once this occurs, if a jury is discharged without returning a verdict, the defendant cannot be retried unless the defendant consented to the discharge, or manifest necessity required it. (*Green, supra,* 355 U.S. at p. 188 [2 L.Ed.2d at pp. 204-205].) In *United States* v. *Perez* (1824) 22 U.S. (9 Wheat.) 579, 580 [6 L.Ed. 165-166], the Supreme Court first recognized that the discharge of a jury that had failed to agree was an instance of manifest necessity permitting retrial of the defendant. The high court has steadfastly adhered to the rule. (See, e.g., *Dreyer* v. *Illinois* (1902) 187 U.S. 71 [47 L.Ed. 79, 23 S.Ct. 28]; *Keerl* v. *Montana* (1909) 213 U.S. 135 [53 L.Ed. 734, 29 S.Ct. 469]; *Green, supra,* 355 U.S. 184; *Arizona* v. *Washington* (1978) 434 U.S. 497, 509 [54 L.Ed.2d 717, 730, 98 S.Ct. 824].) As the court in *Richardson* v. *United States, supra,* 468 U.S. 317, explains, the rule permitting retrial following deadlock " 'accords recognition to society's interest in giving the prosecution one complete opportunity to convict those who have violated its laws.' " (*Id.* at p. 324 [82 L.Ed.2d at p. 250], quoting *Arizona* v. *Washington, supra,* 434 U.S. at p. 509 [54 L.Ed.2d at p. 730]; see also *People*

v. *Williams* (1987) 195 Cal.App.3d 398, 407-408 [240 Cal.Rptr. 717] [under Fifth Amendment of the United States Constitution, when jury deadlocked, state's interest in enforcing laws and ensuring public order outweighs burden on defendant to face state's prosecutorial machinery].)

Similar to the federal manifest-necessity rule, California's doctrine of legal necessity is a well-established exception to the constitutional prohibition against double jeopardy. (See *Paulson* v. *Superior Court* (1962) 58 Cal.2d 1, 5 [22 Cal.Rptr. 649, 372 P.2d 641] [under California law, no constitutional or statutory bar to retrial if "legal necessity" for discharge].) Like its federal counterpart, the state rule permits retrial following discharge of a jury that has been unable to agree on a verdict. (See *People* v. *Smalling* (1892) 94 Cal. 112, 115 [29 P. 421]; *People* v. *James* (1893) 97 Cal. 400 [32 P. 317]; *Paulson* v. *Superior Court, supra,* 58 Cal.2d at p. 5; *Curry* v. *Superior Court, supra,* 2 Cal.3d at pp. 713-714; *Stone, supra,* 31 Cal.3d at p. 522 [noting important public interest in finally determining defendant's guilt or innocence].) The rule is codified in sections 1140 and 1141, which permit retrial following discharge of a jury after the court has determined "there is no reasonable probability that the jury can agree." (§ 1140; see *People* v. *Tong* (1909) 155 Cal. 579, 581 [102 P. 263].) Section 1160 implements the legal necessity doctrine in the multiple count situation by permitting the trial court to receive a verdict on one count and to discharge the jury with respect to another count on which the jury deadlocked without jeopardy attaching as to that charge. (See *Sturms* v. *Justice Court* (1970) 4 Cal.App.3d 36, 39 [84 Cal.Rptr. 69].)

 The parties draw opposite conclusions from these double jeopardy principles. Defendant argues that, under the implied acquittal doctrine, when the jury returned a verdict of guilty on the lesser included offense,[2] it impliedly acquitted defendant of the greater offense, barring a subsequent prosecution on that charge. The People contend, however, that because the jury deadlocked on the greater offense, there existed both the manifest necessity and the legal necessity to discharge the jury without a verdict on that charge, thus permitting retrial of defendant on the greater offense. As we explain, neither the implied acquittal doctrine nor the doctrine of manifest or legal necessity is properly invoked in this case.

---

[2]The parties do not dispute that the offense charged in count II, vehicular manslaughter while intoxicated (§ 192, subd. (c)(3)), is a lesser included offense to gross vehicular manslaughter while intoxicated (§ 191.5, subd. (a)), charged in count I. The requisite element of gross negligence in section 191.5, subdivision (a), is satisfied by a showing that the accused exercised " 'so slight a degree of care as to raise a presumption of conscious indifference to the consequences.' " (*People* v. *Ochoa* (1993) 6 Cal.4th 1199, 1204 [26 Cal.Rptr.2d 23, 864 P.2d 103], quoting *People* v. *Bennett* (1991) 54 Cal.3d 1032, 1036 [2 Cal.Rptr.2d 8, 819 P.2d 849].)

Although the United States Supreme Court has not passed on the precise double jeopardy issue presented here, several of its prior decisions strongly suggest the doctrine of implied acquittal is inapplicable to cases in which the jury is expressly deadlocked, rather than merely silent, on the greater offense. In *Selvester* v. *United States* (1898) 170 U.S. 262, 263, 265 [42 L.Ed. 1029, 1030, 1030-1031, 18 S.Ct. 580], the court affirmed the trial court's receipt of the jury's verdict of guilty on three counts, even though the jury had deadlocked on a fourth count. As the court explained, when a jury convicts on some counts and is silent as to others, the effect of the jury's discharge is equivalent to an acquittal barring retrial on those counts on which the jury failed to render a verdict because "the record affords no adequate legal cause for the discharge of the jury." (*Id.* at p. 269 [42 L.Ed. at p. 1032].) By contrast, the court further explained, when juror disagreement is formally entered on the record, "[t]he effect of such entry justifies the discharge of the jury, and therefore a subsequent prosecution for the offense as to which the jury has disagreed and on account of which it has been regularly discharged would not constitute second jeopardy." (*Ibid.*)

In its decisions in *Green, supra,* 355 U.S. 184, and *Price* v. *Georgia, supra,* 398 U.S. 323, the Supreme Court again recognized a distinction, for double jeopardy purposes, between a jury's silence and its expressed inability to return a verdict. In *Green,* the defendant was charged with arson in count 1, and with murder by causing the death of a person by arson in count 2. (355 U.S. at p. 185 [2 L.Ed.2d at p. 203].) The trial court instructed the jury it could find the defendant guilty of arson and either first degree murder or second degree murder. The jury found the defendant guilty of arson and of second degree murder, but was silent on the charge of first degree murder. The defendant's conviction was reversed on appeal and on retrial he was again charged with first degree murder. The second trial resulted in the defendant's conviction for first degree murder.

The Supreme Court held that the retrial of the defendant on the first degree murder charge violated the double jeopardy clause of the Fifth Amendment. (*Green, supra,* 355 U.S. at p. 198 [2 L.Ed.2d at p. 210].) Its holding rested on two grounds. First, the court noted that the defendant had already been forced to "run the gantlet" on that charge in the first trial, and that the failure of the jury to convict him then was an implied acquittal on the charge. (*Id.* at pp. 190-191 [2 L.Ed.2d at pp. 205-206].) Second, and "more broadly" (*Price* v. *Georgia, supra,* 398 U.S. at p. 329 [26 L.Ed.2d at p. 305]), the *Green* court pointed out that because the jury had been dismissed without rendering an express verdict on the first degree murder charge, but "was given a full opportunity to return a verdict *and no extraordinary circumstances appeared which prevented it from doing so*" (*Green,*

*supra*, 355 U.S. at p. 191 [2 L.Ed.2d at p. 206], italics added), the defendant's jeopardy for first degree murder came to an end when the jury was discharged. (*Ibid.*) That the court intended to exempt jury deadlock from its holding prohibiting retrial following discharge without a verdict is demonstrated by its express recognition, earlier in the text, of the well-established rule that "jeopardy is not regarded as having come to an end . . . in those cases where 'unforeseeable circumstances . . . arise during [the first] trial making its completion impossible, such as the failure of a jury to agree on a verdict.' [Citation.]" (*Id.* at p. 188 [2 L.Ed.2d at p. 205].) Under *Green*, a jury's silence on the greater offense does not constitute manifest necessity to discharge the jury without a verdict, and retrial of the defendant is therefore barred. By its own terms, however, *Green* does not compel the conclusion that when the jury expressly deadlocks on the greater offense but returns a verdict of conviction on the lesser, the conviction of the lesser operates as an implied acquittal of the greater. (Accord, *Staael* v. *State* (Alaska Ct.App. 1985) 697 P.2d 1050, 1053-1054.)

In light of the *Green* court's express exclusion from its holding of those cases in which the jury was discharged without returning a verdict because of an inability to agree, we conclude that, under the Fifth Amendment of the United States Constitution, when the jury expressly deadlocks on the greater offense but returns a verdict of conviction on the lesser included offense, the conviction on the lesser offense does not operate as an implied acquittal of the greater. Courts in other jurisdictions have reached a similar conclusion. (See *Mauk* v. *State* (1992) 91 Md.App. 456 [605 A.2d 157, 171] [retrial on greater offense following declaration of mistrial because of hung jury not barred by federal double jeopardy principles notwithstanding guilty verdict on lesser included offense]; *State* v. *Snellbaker* (1994) 272 N.J.Super. 129 [639 A.2d 384, 387]; *State* v. *Crago* (1994) 93 Ohio App.3d 621 [639 N.E.2d 801, 810-811]; *People* v. *Kettler* (1983) 112 Ill.App.3d 1061 [68 Ill.Dec. 644, 446 N.E.2d 550, 555]; but see *People* v. *Fisher* (1994) 259 Ill.App.3d 445 [198 Ill.Dec. 445, 632 N.E.2d 689, 692-695] [no analytical distinction between jury deadlock and jury silence for double jeopardy purposes].)

Although we conclude the Fifth Amendment of the United States Constitution does not compel application of the doctrine of implied acquittal in every case in which the jury returns a verdict of guilty on the lesser included offense, our inquiry does not end there. As previously noted, federal law sets the minimum standards of double jeopardy protection. Under California law, in some instances, an accused may be entitled to greater double jeopardy protection than that afforded under the federal Constitution. (*Stone, supra*, 31 Cal.3d at p. 510; see also *Raven* v. *Deukmejian, supra*, 52 Cal.3d at p. 355.) Thus, we must consider whether, under California law, the doctrine of

implied acquittal operates to bar defendant's retrial for gross vehicular manslaughter while intoxicated.

As previously noted, the doctrines of implied acquittal on the one hand, and manifest necessity/legal necessity on the other, are well established under both the federal and state Constitutions. Although the doctrines derive from different constitutional charters, their underlying rationales are essentially the same. (See, e.g., *People* v. *Smalling, supra,* 94 Cal. at p. 116 [citing to reasoning of *United States* v. *Perez, supra,* 22 U.S. (9 Wheat.) 579, as support for state's doctrine of legal necessity].) Moreover, we discern nothing in the state decisions suggesting it is any more plausible under California law than under federal law to construe a jury's explicit failure to either acquit or convict as an implied acquittal. We thus conclude that under the double jeopardy principles embodied in the California Constitution, when jurors deadlock on a greater offense, an acquittal on that charge will not be implied by the jury's verdict of guilty on a lesser included offense.

Defendant asserts nonetheless that under the rule of *People* v. *Kurtzman* (1988) 46 Cal.3d 322 [250 Cal.Rptr. 244, 758 P.2d 572] (hereafter *Kurtzman*), the jury's verdict of guilty on the lesser included offense operated to automatically and impliedly acquit him of the greater offense. As a result, he contends, retrial on the greater offense is barred, notwithstanding the jury's deadlock on that charge. *Kurtzman* does not, however, support such a proposition.

In *Kurtzman, supra,* 46 Cal.3d 322, the defendant was charged with first degree murder. The trial court instructed the jury that if it were not convinced beyond a reasonable doubt that the defendant was guilty of the charged crime, it could convict him of the lesser included offenses of second degree murder or manslaughter. After the jury informed the trial court it had deadlocked on the murder charge but had reached a verdict on manslaughter, the court admonished the jury to deliberate until it reached a verdict on first degree murder before determining the lesser included offenses. The jury then acquitted the defendant of first degree murder, and, following further deliberations, returned a verdict of guilty of second degree murder. (*Id.* at pp. 327-328.)

The defendant sought reversal of his second degree murder conviction on the ground that the trial court erred by advising the jurors during their deliberations that they must unanimously agree on whether or not the defendant was guilty of the greater offense of second degree murder before "considering" their verdict on voluntary manslaughter. (*Kurtzman, supra,* 46 Cal.3d at p. 324.) Agreeing with the defendant that it was error for the trial

court to have so directed the sequence of the jury's deliberations, we held that "*Stone*[, *supra*, 31 Cal.3d 503] should be read to authorize an instruction that the jury may not *return a verdict* on the lesser offense unless it has agreed . . . that the defendant is not guilty of the greater crime charged, but it should not be interpreted to prohibit a jury from *considering* or *discussing* the lesser offenses before returning a verdict on the greater offense." (*Kurtzman, supra*, 46 Cal.3d at p. 329, original italics.)

Contrary to defendant's suggestion, the statement in *Kurtzman* that "the jury may not return a verdict on the lesser offense unless it has agreed . . . that defendant is not guilty of the greater crime charged" (46 Cal.3d at p. 329, italics omitted), has no bearing on the scope of the implied acquittal doctrine. Rather, it was meant to establish the "acquittal-first" rule as a mandatory rule of procedure. (See *Kurtzman, supra*, 46 Cal.3d at pp. 332, 333-334.) Having found no precedent supporting a different rule, *Kurtzman* concluded that the practice of requiring unanimous acquittal on the greater offense before returning a verdict on the lesser included offense represented an appropriate balancing of interests, protecting a defendant's interest in not improperly restricting the jury's deliberations, and recognizing the state's interest in having the jury grapple with the question of a defendant's guilt of the highest crime charged. (*Id.* at pp. 333-334.) That decision did not address and, therefore, provides no guidance on whether the implied acquittal doctrine is properly applied here.

The Court of Appeal found support for applying the implied acquittal doctrine to this case in *People* v. *Zapata* (1992) 9 Cal.App.4th 527 [12 Cal.Rptr.2d 118] (hereafter *Zapata*). The defendant in *Zapata* was charged with two counts of attempted murder, and the jury was instructed regarding the lesser included offense of attempted voluntary manslaughter and the lesser related offense of assault with a deadly weapon. The jury acquitted the defendant of all charges relating to one victim, and acquitted him on the charge of attempted murder relating to the other victim. After determining that the jury was deadlocked on the lesser included offense of attempted voluntary manslaughter, the court declared a mistrial on that charge. (*Id.* at p. 531.) The court did, however, accept the jury's verdict of guilty on the lesser related offense of assault with a deadly weapon. The defendant appealed, arguing that his conviction was void because the trial court had erred under *Stone, supra*, 31 Cal.3d 503, and *Kurtzman, supra*, 46 Cal.3d 322, by permitting the jury to return a verdict of guilty on the lesser related offense before deciding the lesser included offense of attempted voluntary manslaughter. (*Zapata, supra*, 9 Cal.App.4th at p. 531.)

Recognizing that the procedure followed by the trial court was not in accord with the procedures set forth in *Stone* and *Kurtzman*, the *Zapata* court

found nonetheless that the defendant's rights had not been violated because he could not later be retried for attempted involuntary manslaughter. According to the court in *Zapata*, under the doctrine of implied acquittal, the jury's verdict on the lesser related offense operated as an implicit acquittal of the lesser included offense on which the jury had deadlocked, barring a second trial on that charge. (*Zapata, supra,* 9 Cal.App.4th at p. 534.)

As our decision today makes clear, the jury's express deadlock on a greater offense forecloses application of the doctrine of implied acquittal, notwithstanding the jury's verdict of guilty on a lesser included offense. *Zapata's* reasoning that the jury's guilty verdict on the lesser related offense acted as an implicit acquittal of the defendant on the charge of attempted voluntary manslaughter on which the jury was unable to agree is thus erroneous. The decision is disapproved to the extent it suggests that the doctrine of implied acquittal would have operated to bar retrial of the defendant for an offense on which the first jury had deadlocked.[3]

### III.

 Although we find the doctrine of implied acquittal inapplicable to a case such as this one, in which the jury is not merely silent but expressly deadlocked on the greater offense, this conclusion does not mean that defendant was properly retried on the greater offense under principles of manifest necessity or legal necessity. To the contrary, notwithstanding the jury's deadlock on the greater offense, defendant could not be subjected to retrial on that charge. As we explain, once the verdict of guilty on the lesser included offense was received by the trial court and recorded, and the jury was discharged, defendant stood convicted of the lesser included offense within the meaning of section 1023. Pursuant to that statute, when an accused is convicted of a lesser included offense, the conviction bars a subsequent prosecution for the greater offense. (*People* v. *Greer* (1947) 30 Cal.2d 589, 596-597.)

 Section 1023 provides, in relevant part, that "When the defendant is convicted or acquitted or has been once placed in jeopardy upon an accusatory pleading, the conviction, acquittal, or jeopardy is a bar to another prosecution for the offense charged in such accusatory pleading, or for an attempt to commit the same, or for an offense necessarily included therein, of which he might have been convicted under that accusatory pleading." (§ 1023.) The statute implements the protections of the state constitutional prohibition against double jeopardy, and, more specifically, the doctrine of

---

[3]We express no opinion on whether the doctrine of implied acquittal is properly invoked in a case involving lesser related offenses.

included offenses. (*People* v. *Tideman, supra,* 57 Cal.2d at p. 582; *People* v. *Smith* (1950) 36 Cal.2d 444, 448 [224 P.2d 719]; *People* v. *Kehoe* (1949) 33 Cal.2d 711, 713 [204 P.2d 321]; *People* v. *Greer, supra,* 30 Cal.2d at pp. 596-597; see also 1 Witkin & Epstein, Cal. Criminal Law (2d ed. 1988) Defenses, § 271, p. 312.) Underlying this principle—that a conviction of a lesser included offense is a bar to a subsequent prosecution for the greater offense—is the notion that, once a conviction on the lesser offense has been obtained, " 'to [later] convict of the greater would be to convict twice of the lesser.' " (*Greer, supra,* 30 Cal.2d at p. 597, quoting *People* v. *Krupa* (1944) 64 Cal.App.2d 592, 598 [149 P.2d 416]; cf. *People* v. *Pearson* (1986) 42 Cal.3d 351, 355 [228 Cal.Rptr. 509, 721 P.2d 595] [recognizing rule prohibiting conviction of both greater and lesser included offenses].)

In *People* v. *Greer, supra,* 30 Cal.2d 589, the court applied section 1023 to procedural facts similar to those presented here. At the defendant's first trial, the jury found him guilty of contributing to the delinquency of a minor (former Welf. & Inst. Code, § 702), and deadlocked on statutory rape (former § 261, subd. (1)), and lewd and lascivious conduct (former § 288). (*Greer, supra,* 30 Cal.2d at pp. 591, 595.) The trial court entered judgment against the defendant on the offense of contributing to the delinquency of a minor. At a second trial, the defendant was again charged with violating the offenses on which the first jury had deadlocked, and was convicted on both counts. (*Id.* at p. 591.)

On direct appeal to this court, the defendant in *Greer* claimed in relevant part that the trial court erred by not permitting him to prove the fact of his previous prosecution for purposes of asserting the claim that his second trial was barred by double jeopardy. The court agreed, construing section 1023 to bar a subsequent prosecution for the greater offense following a previous conviction on the lesser included offense. (30 Cal.2d at p. 597.) The court found that because the offense of contributing to the delinquency of a minor is necessarily included in the two offenses charged in the second prosecution, defendant had the right to attempt to prove his previous conviction for purposes of asserting the double jeopardy bar.[4] (*Id.* at pp. 597-598, 601.) The matter was remanded to the trial court accordingly. (*Id.* at p. 604.)

Like the accused in *Greer* who was first convicted of the lesser included offense and later brought to trial on the greater offenses in a subsequent proceeding, defendant here "has been subjected to more than an additional

---

[4]Although dictum in *Greer* regarding "specifically included offenses" was subsequently disapproved in *People* v. *Pearson, supra,* 42 Cal.3d at pages 357-358, *Greer*'s construction of section 1023 remains good law. (See *People* v. *Lohbauer, supra,* 29 Cal.3d at p. 372; 1 Witkin & Epstein, Cal. Criminal Law, *supra,* Defenses, § 326, p. 377.)

trial." (*People* v. *Greer, supra,* 30 Cal.2d at p. 598.) The court in *Greer* observed that the defendant was serving a prison sentence for the first conviction at the time he was sentenced on the subsequent convictions, and the latter sentence was to run concurrently only as to time not yet served. (*Ibid.*) The court also noted that the defendant's multiple convictions placed him at a disadvantage when attempting to seek parole. (*Ibid.*) Defendant in this case faces similar consequences as a result of his multiple convictions, including the specter of an additional "strike" under the current recidivist sentencing scheme. (See § 667, subds. (b)-(e).)

Underlying *Greer*'s interpretation of section 1023—that a conviction of the lesser included offense bars the subsequent prosecution of the greater offense—was the concern that, if such were not the rule, "section 1023 could be vitiated by the simple device of beginning with a prosecution of the lesser offense and proceeding up the scale." (*People* v. *Greer, supra,* 30 Cal.2d at p. 597.) The People assert that, in light of modern procedural rules, *Greer*'s concern over serial prosecutions is no longer relevant, and thus provides little justification for barring retrial following mistrial on a greater offense simply because there also exists a conviction on the lesser included offense. They fail to offer solutions, however, to any of the numerous and formidable practical difficulties that would arise by abandoning the rule of *Greer* and permitting retrial under such circumstances.[5] We therefore conclude that, pursuant to section 1023 and *Greer*, the conviction of the lesser offense in the first trial operated to bar the retrial of defendant on the greater offense, regardless of the first jury's deadlock on the greater offense.

The People argue that, notwithstanding section 1023, defendant's retrial on gross vehicular manslaughter while intoxicated was proper under section 1160 which provides, in pertinent part, "Where two or more offenses are charged in any accusatory pleading, if the jury cannot agree upon a verdict as to all of them, they may render a verdict as to the charge or charges upon which they do agree, and the charges on which they do not agree may be tried again." Here, however, the jury returned a guilty verdict on count II, a lesser included offense to that charged in count I. When the offenses charged

---

[5]For example, in the second trial on the greater offense, does the trial court instruct the jury that the accused was previously convicted of the lesser included offense, or, alternatively, charge the jury on that offense? If the jury is told of the former conviction, there exists the potential for juror confusion and/or speculation. On the other hand, if, in order to avoid giving the jury an impermissible "all or nothing" choice between guilty on the greater offense or acquittal, the jury is instructed on the lesser included offense (see *People* v. *Barton* (1995) 12 Cal.4th 186, 196 [47 Cal.Rptr.2d 569, 906 P.2d 531]), what becomes of the first conviction if the second jury acquits on the greater offense without convicting on the lesser offense? A defendant would appear to have a good argument that he is entitled to the double jeopardy effect of this acquittal, notwithstanding the previous, now inconsistent, conviction on the lesser offense.

in the accusatory pleading are greater and lesser included offenses, section 1160 is construed accordingly. (*Kurtzman, supra,* 46 Cal.3d at pp. 332-333.)

To accept the People's argument that section 1160 is properly applied here would require recognizing an analytical distinction between proceedings in which the lesser included offense was specifically charged in a separate count, and those in which the lesser offense is impliedly charged in an information charging only the greater offense in a single count. ▆ It is well established, however, that the prosecutor's method of charging a defendant does not affect a defendant's double jeopardy rights. (See *Stone, supra,* 31 Cal.3d at p. 517 [same double jeopardy principles applicable regardless of whether accused charged under one count or separate counts]; *Green, supra,* 355 U.S. at p. 190, fn. 10 [2 L.Ed.2d at p. 205] [same].) "The prosecution cannot avoid the consequences of a conviction of a necessarily included offense by charging the included offense in a separate count, on the theory that a conviction under such circumstances constitutes a conviction of a separate offense." (*People* v. *Greer, supra,* 30 Cal.2d at p. 598.) As *Greer* explains, it is not necessary for the prosecutor to charge a violation of a lesser included offense to obtain a conviction of defendant on that crime because, properly instructed, the jury could have returned a verdict on the lesser offense.[6] (*Ibid.;* see also §§ 954 [prosecutor may charge greater and lesser included offenses in separate counts] and 1159 [prosecutor may charge only greater offense; lesser included offenses charged by implication]; *Stone, supra,* 31 Cal.3d at p. 517.) Moreover, under modern procedures, the trial court is *required* to instruct sua sponte on lesser included offenses warranted by the evidence introduced at trial. (*People* v. *Sedeno* (1974) 10 Cal.3d 703, 715-716 [112 Cal.Rptr. 1, 518 P.2d 913]; see also *People* v. *Johnson* (1993) 6 Cal.4th 1, 43 [23 Cal.Rptr.2d 593, 859 P.2d 673]; *People* v. *Barton, supra,* 12 Cal.4th at pp. 196-201 [declining to overrule *People* v. *Sedeno, supra,* 10 Cal.3d 703].) Contrary to the assertion of the People, we find no analytical significance to a distinction between a charged and an uncharged lesser included offense.

## IV.

▆ As previously stated, we reject defendant's suggestion that *Kurtzman, supra,* 46 Cal.3d 322, should be read to require an implied acquittal in every case in which the jury returns a verdict of guilty on the lesser included

---

[6]In light of our conclusion that a verdict of guilty on a lesser included offense does not operate as an implied acquittal of the greater offense on which the jury has deadlocked, *Greer*'s suggestion that the jury's returning a verdict of guilty on the lesser included offense constituted an acquittal of the greater offenses on which the jury had deadlocked (see *People* v. *Greer, supra,* 30 Cal.2d at p. 598) is incorrect and we overrule it on this point.

offense but fails to return a verdict on the greater offense. It is apparent, however, that one significant advantage to the procedure for receipt of partial verdicts of acquittal established in *Stone* and further refined in *Kurtzman* is that, when properly employed, it renders the need to invoke the doctrine of implied acquittal unnecessary. *Kurtzman* established that the jury may deliberate on the greater and lesser included offenses in whatever order it chooses, but that it must acquit the defendant of the greater offense before returning a verdict on the lesser offense. (*Id.* at p. 333.) In this manner, when the jury renders its verdict on the lesser included offense, it will also have *expressly* determined that the accused is not guilty of the greater offense.

The acquittal-first rule, requiring the jury to expressly acquit the defendant before rendering a verdict on the lesser offense, serves the interests of both defendants and prosecutors (see *Kurtzman, supra,* 46 Cal.3d at p. 334; cf. *United States* v. *Tsanas* (2d Cir. 1978) 572 F.2d 340, 346), and we encourage trial courts to continue the practice of giving the so-called *Kurtzman* instruction set forth in CALJIC No. 17.10 (1989 re-rev.) at the outset of jury deliberations. Indeed, but for the trial court's incomplete *Kurtzman* instruction in this case, the double jeopardy issue presented by the situation here—in which the jury both deadlocked on the greater offense *and* returned a verdict of guilty on the lesser included offense—would not have arisen.[7]

We recognize that the trial court retains discretion to dispense with instructing the jury pursuant to *Kurtzman* until such time as a jury deadlock arises. (*Kurtzman, supra,* 46 Cal.3d at p. 329; *Stone, supra,* 31 Cal.3d at p. 519.) When, however, the jurors express their inability to agree on a greater inclusive offense, while indicating they have reached a verdict on a lesser included offense, the trial court must caution the jury at that time that it "may not return a verdict on the lesser offense unless it has agreed . . . that

---

[7]The record in defendant's first trial indicates that the trial court granted defendant's request for a *Kurtzman* instruction. The record also shows that when it was instructing the jury accordingly, that it must first acquit defendant of the greater offense before returning a verdict on the lesser, the trial court properly informed jurors that the uncharged crime of vehicular manslaughter (§ 192, subd. (c)(2)) was a lesser included offense to the crimes charged in counts I, II, and III. The trial court did not, however, instruct the jury that the crime charged in *count II*, vehicular manslaughter while intoxicated, was a lesser included offense to *count I*, gross vehicular manslaughter while intoxicated. Neither the People nor defendant brought this matter to the attention of the trial court, nor did defendant claim on appeal that the trial court erred by failing to instruct the jury that count II was a lesser included offense of count I.

We express no opinion concerning whether the trial court's omission in and of itself constituted reversible error, or whether trial counsel's failure to object to the *Kurtzman* instruction as given violated defendant's right to the effective assistance of counsel. (Cf. *People* v. *Berryman* (1993) 6 Cal.4th 1048, 1077, fn. 7 [25 Cal.Rptr.2d 867, 864 P.2d 40] [suggesting inherent difficulty in demonstrating prejudice from *Stone/Kurtzman* instructional error].)

defendant is not guilty of the greater crime charged." (*Kurtzman, supra,* 46 Cal.3d at p. 329, italics omitted.) In light of the rule established in *Kurtzman,* the trial court commits error if it receives and records a verdict of guilty on the lesser included offense without ever having given the jury an acquittal-first instruction.

As our opinion today makes clear, under *Kurtzman,* when the jury returns a verdict on the lesser included offense, it must also render a corresponding verdict of acquittal on the greater offense. If a verdict of guilty on the lesser offense is recorded and the jury discharged without having rendered any verdict on the greater offense, a retrial on the greater offense is barred under section 1023, regardless of whether the jury expressly deadlocked on that charge. We recognize, however, that there may be instances such as occurred here in which, contrary to the rule of *Kurtzman,* the jury renders only a verdict of guilty on the lesser included offense. If this occurs, the trial court may properly decline to receive and record this verdict of conviction pending further deliberations by the jury. More specifically, prior to discharging the jury, the trial court has the authority pursuant to section 1161 to direct the jury to reconsider its lone verdict of conviction on the lesser included offense in light of *Kurtzman* and the acquittal-first rule. (Cf. *People* v. *Wissenfeld* (1951) 36 Cal.2d 758, 766 [227 P.2d 833] [trial court directed jury to deliberate further after, contrary to instructions, jury returned verdicts of guilty on both greater and lesser included offenses].) By making use of such a procedure, the trial court can prevent the unintended consequences flowing from the jury's mistake in returning a verdict of guilty on the lesser included offense while deadlocking on the greater offense.

Section 1161 provides in pertinent part: "When there is a verdict of conviction, in which it appears to the court that the jury have mistaken the law, the court may explain the reason for that opinion and direct the jury to reconsider their verdict, and if after the reconsideration, they return the same verdict, it must be entered. . . ." If, contrary to *Kurtzman,* the jury renders only a verdict of conviction on the lesser included offense, without a corresponding verdict of acquittal on the greater offense, its verdict of conviction is incomplete "under the law and the instructions." (*People* v. *Bonillas* (1989) 48 Cal.3d 757, 769 [257 Cal.Rptr. 895, 771 P.2d 844]; see also *Gray* v. *Superior Court* (1989) 214 Cal.App.3d 545, 550-551 [262 Cal.Rptr. 672].) Under these circumstances, the trial court is permitted, pursuant to section 1161, to direct the jury to reconsider its verdict of conviction in light of the acquittal-first rule.

Prior to the discharge of the jury, during which time the trial court is empowered to direct the jury to reconsider a lone verdict of conviction on the lesser included offense in light of *Kurtzman,* the incomplete verdict of

conviction rendered by a jury "mistaken in the law" does not implicate a defendant's double jeopardy interest in avoiding retrial on the greater offense. (Cf. *Burks* v. *United States* (1978) 437 U.S. 1, 15 [57 L.Ed.2d 1, 12, 98 S.Ct. 2141] [after reversal for trial error, accused has strong interest in obtaining fair readjudication of guilt free from error]; *People* v. *Shirley* (1982) 31 Cal.3d 18, 71 [181 Cal.Rptr. 243, 723 P.2d 1354] [double jeopardy clause does not prohibit retrial after a reversal premised on error of law].) By contrast, if the jury renders an incomplete verdict of conviction on the lesser included offense, and the rendered verdict is received by the court and recorded, and the jury is discharged, the trial court no longer has jurisdiction to direct jurors to reconsider their irregular verdict. (Cf. *People* v. *Bonillas*, *supra*, 48 Cal.3d at pp. 770-771; see also *People* v. *Cain* (1995) 10 Cal.4th 1, 55 [40 Cal.Rptr.2d 481, 892 P.2d 1224]; *People* v. *Turner* (1990) 50 Cal.3d 668, 701 [268 Cal.Rptr. 706, 789 P.2d 887].) Under such a scenario, the consequence of the "mistake in the law" should be borne by the People, rather than the defendant. Thus, once the jury is discharged after rendering a verdict of guilty on the lesser included offense, without a corresponding verdict of acquittal on the greater offense, the defendant stands convicted of the lesser included offense, and retrial on the greater offense is barred notwithstanding the jury's deadlock on that charge. (§ 1023.)

Placing the onus on the People to bring an incomplete verdict of conviction to the trial court's attention prior to jury discharge is appropriate because it preserves the possibility that, after reconsideration pursuant to section 1161, the jury will decline to return the requisite verdict of acquittal of the greater offense. Should this occur, the incomplete verdict of conviction on the lesser included offense initially rendered by the jury is of no effect, and the prosecutor may move the trial court to declare a mistrial, discharge the jury, and set the entire matter for retrial. (§§ 1140, 1141; *People* v. *Avalos* (1984) 37 Cal.3d 216, 228 [207 Cal.Rptr. 549, 689 P.2d 121].) Alternatively, when faced with a deadlock on the greater offense and a verdict of guilt on the lesser included offense, the People may prefer to forgo the opportunity to convict the accused of the greater offense on retrial in favor of obtaining a present conviction on the lesser included offense. (*Zapata*, *supra*, 9 Cal.App.4th 527, 534.) In that case, the People should move the trial court to exercise its discretion to dismiss the charge on the greater offense in furtherance of justice under section 1385. (See *People* v. *Bordeaux* (1990) 224 Cal.App.3d 573, 581-582 [273 Cal.Rptr. 717] [right to mistrial under section 1140 does not impair trial court's authority to dismiss charge pursuant to section 1385].)

V.

Although we conclude that the jury's verdict of guilty on the lesser included offense in this case did not operate as an implied acquittal of the

greater offense on which the jury had deadlocked, we agree with the Court of Appeal that defendant was improperly retried on the greater offense. Pursuant to section 1023, defendant's conviction of the lesser included offense barred a subsequent retrial on the greater offense, notwithstanding the first jury's deadlock on that charge.[8]

The judgment of the Court of Appeal reversing defendant's conviction for gross voluntary manslaughter while intoxicated, and reinstating the original sentence, is therefore affirmed.

George, C. J., Kennard, J., Baxter, J., Werdegar, J., and Arabian, J.,* concurred.

MOSK, J.—I concur in the judgment. I also generally concur in the opinion prepared for the court by former Chief Justice Lucas. I write separately only to make the following observation. The double jeopardy clause of the Fifth Amendment to the United States Constitution, made applicable to the states through the due process clause of the Fourteenth Amendment (*Benton* v. *Maryland* (1969) 395 U.S. 784, 793-796 [23 L.Ed.2d 707, 715-717, 89 S.Ct. 2056]), "protects" a defendant "against a second prosecution for the same offense" "after conviction" as well as "after acquittal." (*North Carolina* v. *Pearce* (1969) 395 U.S. 711, 717 [23 L.Ed.2d 656, 664-665, 89 S.Ct. 2072].) For present purposes, the "same offense" encompasses the greater including offense and the lesser included offense. (*Brown* v. *Ohio* (1977) 432 U.S. 161, 164-169 [53 L.Ed.2d 187, 193-196, 97 S.Ct. 2221].) Hence, the double jeopardy clause protects defendant against a second prosecution for gross vehicular manslaughter while intoxicated, the greater including offense, after conviction for vehicular manslaughter while intoxicated, the lesser included offense.

Respondent's petition for a rehearing was denied June 12, 1996, and the opinion was modified to read as printed above.

---

[8]In light of our holding, we need not address defendant's further contention that permitting a retrial on the greater offense following conviction on the lesser included offense deprived him of the due process right to lesser included offense instructions warranted by the evidence.

*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairperson of the Judicial Council.