Filed 4/16/15  P. v. Marshall CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G050893 |
| v. | (Super. Ct. No. SWF10000738) |
| TYRONE MARSHALL and EVAN RAMON ROLAND, | O P I N I O N |
| Defendants and Appellants. | |

Appeals from judgments of the Superior Court of Riverside County, Gary B. Tranbarger, Judge.  Affirmed.

Eric S. Multhaup for Defendant and Appellant Tyrone Marshall.

Catherine White, under appointment by the Court of Appeal, for Defendant and Appellant Evan Ramon Roland.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Lynne G. McGinnis and Eric A. Swenson, Deputy Attorneys General, for Plaintiff and Respondent.

\*          \*          \*

Defendants Tyrone Marshall and Evan Ramon Roland both appeal after a jury convicted Marshall of first degree murder with lying in wait special circumstance and personal discharge of a firearm allegations and convicted Roland of second degree murder. Marshall's appeal contends his rights were violated by the admission of statements attributed to Roland. Roland contends the court erred in failing to instruct the jury it had to find him not guilty of first degree murder before it could return a verdict of guilty of second degree murder.

The statements attributabed to Roland were not admissible against Marshall as statements in furtherance of a conspiracy to commit murder, and the court erred in admitting them. But the error was harmless. The court's failure to instruct the jury to find Roland not guilty of first degree murder before it could return a verdict of guilty of second degree murder was error. But the error was cured by the subsequent dismissal of the first degree murder charge.

We therefore affirm the judgments.


FACTS


Darrel Hosey, known as "Fat Daddy" and a member of the Dorner Bloc gang, exchanged some words with other men, members of a competing gang. When he arrived at home, he was assured either by Roland, who was nicknamed "Bam," or the latter's companion Lecedric Johnson, that he did not have anything to worry about. Hosey asked them for a cigarette; they said they had none and Hosey asked them to come back later if they were able to obtain a cigarette.

Some time later, Roland was in another apartment in the same complex with Johnson and Thomas Haywood when others arrived. Two of the newcomers asked to speak with Roland. They stepped out and when Roland returned, he told his

2

companions "[s]omething bad is going to go down" and "[y]ou guys might not want to be here." After Johnson, Haywood, and Roland were outside, Roland told his companions Marshall "was going to dome Fat Daddy."

Roland then obtained some cigarettes and returned to Hosey's apartment. When Hosey stuck his head out of the window, Roland showed him a cigarette and Hosey came downstairs. Roland told him they had to wait outside because he was expecting a cousin to bring him some pills. Shortly thereafter, Johnson joined them and found Roland and Hosey to be smoking. Roland gave Johnson a cigarette and, as the men were standing there, Marshall ran up and shot Hosey, killing him. Roland stayed near the body and Marshall ran away.

## DISCUSSION

*1. Failure to instruct the jury on the need to acquit Roland of first degree murder before returning a verdict of second degree murder*

Roland was charged with first degree murder. After five days of deliberations, the jury sent the court a note: "We have all agreed on second degree. We have split on first degree, but all accept [the] verdict as written and feel further debate will not change on first degree." The court questioned the jurors. The foreperson told the court, and the other jurors agreed, the disagreement was "intractable" and there had been no progress in reaching a final decision, even after the court clarified the difference between first and second degree murder earlier. Thereupon, the court accepted the Marshall verdict, finding him guilty of first degree murder and excused the jury from the courtroom.

The prosecutor stated the court had failed to instruct the jury that it could not return a verdict on the lesser included offense unless they acquitted Roland of the

3

greater offense. (CALCRIM No. 641.) The prosecutor urged the court to so instruct the jury. The court responded, "The request to have the jury further deliberate is denied. The Court's of the opinion that, if I were to give the jury such an instruction in this context, it would be a form of coercion to the jury to force them to come to a decision as to first. And given the amount of time that they've spent and their previous statements that they are hung, I'm not going to instruct them on that, nor am I going to instruct them . . . on the modified Allen instruction about further deliberations. If this were two days ago, I probably would. But after the amount of time that they have spent, I'm not going to do that. So that request is denied."

The prosecutor then asked the court to dismiss the first degree murder charge. Roland's lawyer asked the court declare a mistrial. The court denied the latter's request and took the prosecutor's motion to dismiss the first degree murder charge under submission. It then took the jury's verdict for second degree murder, polled the jury, and excused the jury. Thereafter, the court ordered the first degree murder charge against Roland be dismissed.

The court erred. (See *People v. Kurtzman* (1988) 46 Cal.3d 322, 332-334.) In cases where a defendant is charged with first degree murder and a lesser offense is submitted to the jury, the court has a sua sponte duty to instruct the jury it must find the defendant not guilty of the greater offense before it can decide he or she is guilty of the lesser offense. In *People v. Fields* (1996) 13 Cal.4th 289 (*Fields*), the Supreme Court stated, "When, however, the jurors express their inability to agree on a greater inclusive offense, while indicating they have reached a verdict on a lesser included offense, the trial court must caution the jury at that time that it 'may not return a verdict on the lesser offense unless it has agreed . . . that defendant is not guilty of the greater crime charged.'" (*Id.* at pp. 309-310.)

4

In *Fields*, the defendant had been charged with gross vehicular manslaughter while intoxicated, vehicular manslaughter while intoxicated, gross vehicular manslaughter, driving under the influence and causing bodily injury, driving with a blood-alcohol level of .08 percent or more and causing bodily injury, and driving with a suspended license. (*Fields, supra,* at p. 296.) The jury was deadlocked on gross vehicular manslaughter while intoxicated and gross vehicular manslaughter but rendered guilty verdicts on the other counts. (*Id.* at pp. 296-297.) The trial court declared a mistrial on the two deadlocked counts, set a date for retrial on those counts, discharged the jury, and sentenced defendant on the remaining counts. (*Id.* at p. 297.)

The procedures employed by the trial court in *Field* are similar to what happened here, except in this case the court ultimately dismissed the first degree murder count. In *Fields*, the trial court ordered a second trial on the greater charges and then resentenced the defendant to a higher term. (*Fields, supra,* at p. 297.)

The Supreme Court reversed the conviction on the greater charge. (*Fields, supra,* at p. 297.) It acknowledged that "when the jury expressly deadlocks on the greater offense but returns a verdict of conviction on the lesser included offense, the conviction on the lesser offense does not operate as an implied acquittal of the greater." (*Id.* at p. 302.) The court came to the same conclusion under the California Constitution's prohibition on double jeopardy: "We thus conclude that under the double jeopardy principles embodied in the California Constitution, when jurors deadlock on a greater offense, an acquittal on that charge will not be implied by the jury's verdict of guilty on a lesser included offense." (*Id.* at p. 303.)

But *Fields* went on to conclude, "Although we find the doctrine of implied acquittal inapplicable to a case such as this one, in which the jury is not merely silent but expressly deadlocked on the greater offense, this conclusion does not mean that defendant was properly retried on the greater offense under principles of manifest

5

necessity or legal necessity. To the contrary, notwithstanding the jury's deadlock on the greater offense, defendant could not be subjected to retrial on that charge. As we explain, once the verdict of guilty on the lesser included offense was received by the trial court and recorded, and the jury was discharged, defendant stood convicted of the lesser included offense within the meaning of [Penal Code] section 1023. Pursuant to that statute, when an accused is convicted of a lesser included offense, the conviction bars a subsequent prosecution for the greater offense." (*Fields, supra,* at p. 305.)

Of course the present case does not involve the *Fields* problem where the defendant was retried on the greater offense after the jury found him guilty of the lesser offense. But one of the remedies suggested by the *Fields* court was used here. The court stated, "Alternatively, when faced with a deadlock on the greater offense and a verdict of guilt on the lesser included offense, the People may prefer to forgo the opportunity to convict the accused of the greater offense on retrial in favor of obtaining a present conviction on the lesser included offense. [Citation.] In that case, the People should move the trial court to exercise its discretion to dismiss the charge on the greater offense in furtherance of justice under [Penal Code] section 1385." (*Id.* at p. 311, see *People v. Bordeaux* (1990) 224 Cal.App.3d 573, 581-582 [right to mistrial under section 1140 does not impair trial court's authority to dismiss charge pursuant to section 1385].) The prosecutor did just that here and the court subsequently granted the motion to dismiss the first degree murder charge. Therefore, the court properly denied defendant's motion for a mistrial.

*2. Admission of extrajudicial statements against Marshall*

Marshall's appeal raises issues dealing with the admission of extrajudicial statements attributed to Roland. These statements were admitted against Marshall because the court, relying on Evidence Code, section 1223, found they were made in

furtherance of the conspiracy to murder Hosey. We disagree with the trial court. But, in light of the overwhelming evidence of Marshall's guilt, the admission of these statements and references to the statements during the trial was harmless.

In response to a motion in limine by the prosecution, the court ruled that evidence of statements attributed to Roland that "[s]omething bad is going to go down" and Marshall "was going to dome Fat Daddy" were admissible as advancing the goals of the conspiracy. In order to support this view, we would have to agree with the Attorney General who urges these statements were made to encourage the hearers to join the conspiracy. But the evidence as presented does not support this conclusion. And as our Supreme Court stated, "The trial court erred when it admitted [a witness'] testimony under the coconspirator statement exception because the foundational requirements— '[t]he statement was made by the declarant while participating in a conspiracy to commit a crime . . . and in furtherance of the objective of that conspiracy' . . . were not met." (*People v. Homick* (2012) 55 Cal.4th 816, 872.) Therefore it was error to admit these statements against Marshall.

In arguing whether the admission of these statements was harmless error, the parties disagree whether we should apply the standards of *People v. Watson* (1956) 46 Cal.2d 818, 836, "there should be no reversal where 'it appears that a different verdict would not otherwise have been probable'" or *Chapman v. California* (1967) 386 U.S. 18, 24 [87 S.Ct. 824, 17 L.Ed.2d 705] "the court must be able to declare a belief that it was harmless beyond a reasonable doubt." *People v. Homick, supra,* Cal.4th 872 suggests the *Watson* standard applies. However, even under the *Chapman* standard, the evidence that Marshall committed the murder under circumstances clearly demonstrating it was willful, deliberate, and premeditated, was so strong that it was clearly "harmless beyond a reasonable doubt."

DNA test confirmed that Marshall had likely used a glove, discarded in the direction he had fled. Defense investigator Sherrie Smith testified she had interviewed Tamara Pritchett, who recounted a conversation with Marshall who told her "I shot him." Witnesses of the shooting described the shooter's clothing and clothes fitting that description were found in a trash can near the route of the shooter's escape. A bloodhound exposed to the scent of the clothes led officers near Marshall's residence.

## DISPOSTION

The judgment is affirmed.

RYLAARSDAM, ACTING P. J.

WE CONCUR:

MOORE, J.

FYBEL, J.