Filed 10/5/16  P. v. Berrigan CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>RUSTON CHAD BERRIGAN,<br><br>Defendant and Appellant. | F071795<br><br>(Super. Ct. No. BF156571A)<br><br>**OPINION** |

### THE COURT[*]

APPEAL from a judgment of the Superior Court of Kern County.  Brian M. McNamara, Judge.

Charles M. Bonneau III, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez and Nora S. Weyl, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]     Before Kane, Acting P.J., Peña, J. and Smith, J.

A jury convicted appellant Ruston Chad Berrigan of two counts of possession for sale of methamphetamine (counts 1 & 3/Health & Saf. Code § 11378) and misdemeanor possession of drug paraphernalia (count 2/Health & Saf. Code, § 11364.1). On May 28, 2015, the court sentenced Berrigan to an aggregate, local split term of three years eight months, the middle term of three years on count 1, a consecutive eight months on count 3, and a concurrent 90-day term on count 2. The court ordered Berrigan to serve the first 22 months in local custody with the remainder of the sentence to be served on mandatory supervision.

On appeal, Berrigan contends the court committed instructional error. We affirm.

## FACTS

### The Trial

The prosecution established that on April 9, 2014, at approximately 10:00 a.m., Bakersfield Police Officer Lukious Sims, Detective Alex Paiz and other officers conducted a search of Berrigan's house in Bakersfield. During a search of the garage, Officer Simms found two glass pipes and a plastic bag that contained 5.07 grams of an off-white crystalline substance that was later determined to be methamphetamine. One pipe had a crystalline residue on it and a discolored end caused by a substance melting in the pipe. In a baseball cap on a couch, Detective Paiz found numerous empty two-inch by two-inch plastic Ziploc baggies with a design printed on them. He also located two digital scales on a coffee table. One of the scales had a white residue on it that appeared to be the same as the crystalline substance Officer Sims found in the plastic bag. During an interview with Detective Paiz, Berrigan admitted that the pipes and the crystalline substance found in the garage belonged to him. He also stated that he "sells a little to make ends meet."

On August 21, 2014, at around 4:00 p.m., Officer Sims, Detective Paiz and other officers returned to Berrigan's house. On this occasion, Detective Paiz noticed that the house had three video surveillance cameras, one on the upstairs eave at the peak of the

2

two-story house, another on the lower edge brim, and one near the front door.  As the officers entered the garage, Officer Sims saw Berrigan toss a prescription bottle to the ground.  Sims retrieved the bottle and inside found a clear plastic bag that contained an off-white crystal substance that was later determined to be 1.56 grams of methamphetamine.  In Berrigan's pocket, Detective Paiz found $30 in currency consisting of a $20 bill and a $10 bill.

The officers also found a monitor in the garage that was displaying feeds from the three cameras noted above and one additional camera.  Additionally, Detective Paiz found a black digital scale with residue on it and numerous two-inch by two-inch Ziploc baggies with a marijuana leaf printed on them.

Detective Paiz also located a cellular phone that Berrigan admitted belonged to him.  Paiz looked through the phone and found several text messages.  A message dated August 10, 2014, and timestamped 11:47 a.m., read: "Hey, Bud, can I swing through for 20?"  A second message of the same date, that was timestamped 11:22 p.m., stated: "Hi, Bud, can I swing through for 20?"  A third message dated August 19, 2014, that was timestamped 5:42 p.m., stated, "Hey, can I swing by real quick?  I'll also bring those bushings for you."  A fourth message dated August 21, 2014, stated, "Hey, sorry about the other day.  My ride flaked.  I have a car.  Can I come through for 20/10?"

Bakersfield Police Detective Lester Van Riddle testified as an expert in narcotics sales that a typical dosage of methamphetamine is about .10 grams, that 5.07 grams of methamphetamine equaled 50 doses, and that the typical user will only possess an amount they can use in a short period of time, i.e., from .10 grams to .50 grams.  Van Riddle also testified that the most important indicator of possession for sale of methamphetamine is the possession of an amount that exceeds what officers would expect to find on a person for personal use.  Other indicators are the possession of paraphernalia associated with sales of methamphetamine such as scales, various types of packaging materials, small denominations of currency consistent with street sales, and

3

cell phones. However, not all of these indicators are found in every case of methamphetamine sales. Detective Van Riddle further testified that people who possessed methamphetamine for personal use rarely possessed scales.

Detective Van Riddle testified that the 1.56 grams found in Berrigan's garage on August 21, 2014, was about 15 doses and that people involved in drug sales often use cell phones to communicate with their source and their buyers. According to Van Riddle, the text messages with the numbers 10 and 20 referred to $10 or $20 amounts of methamphetamine and were amounts he often saw with a .10 gram of methamphetamine being sold for $10 and .20 to .25 grams of methamphetamine being sold for $20.

Detective Van Riddle opined that Berrigan possessed for sale the 5.07 grams of methamphetamine found during the first search. He based his opinion on this amount equaling 50 doses, on Berrigan's possession of several digital scales, including one with residue on it, his possession of two-inch by two-inch Ziploc baggies, and Berrigan's statement that he was "sell[ing] a little to make ends meet." Berrigan's possession of pipes to smoke methamphetamine did not change his opinion because sometimes people involved in the sales of narcotics at the street level are users and they sell some of the drug to support their habit.

Detective Van Riddle also opined that Berrigan possessed for sale the 1.56 grams of methamphetamine found in his possession on August 21, 2014. He based his opinion on the amount of methamphetamine which was enough for approximately 15 doses, Berrigan's possession on that date of a third digital scale, packaging material, and a cell phone with the text messages previously described, the surveillance by video cameras, Berrigan's history of possessing methamphetamine for sale, and his previous admission that he sold methamphetamine.

The defense did not present any evidence.

### Jury Instructions

During jury instructions, the court charged the jury as follows:

4

"*The order in which you challenge this verdict form is purely yours*. Whatever I do here is not a guideline in any manner, shape, or form. You decide how you challenge this job before you. I'm obviously going to take it with the first count, second count, et cetera, for ease.

"*Here's the verdict form*. It will go back to the jury room. It has the defendant's name, verdict, the case number, first count. So on the first count here, the word is guilty on the top, not guilty on the bottom. You go back to the jury room as to Count 1, possession of a controlled substance for sale. You decide that case.

"You sit down. You deliberate, consider all the evidence. If you get together and unanimously agree that the prosecutor has not met their burden of proof as to that count, you would simply date it here and sign here. That's it. So that's the first count. If you decide that, in the alternative -- if you sit down and discuss all the evidence, deliberate, consider everyone's opinion, and you unanimously agree the prosecutor has met their burden of proof, you date it here and sign here.

"That's how you get past that page in and of itself. We talked a bit about lesser-included offenses, what they mean. If, for example, here you get -- you deal with this count and you cannot agree whether the prosecutor has met -- unanimously all 12 of you cannot agree that the prosecutor has met that burden of proof, you cannot go to the lesser-included offense.

"*You cannot get to the second page*. You don't consider the lesser-included. *The only way you get to that next page*, if you all agree the prosecutor -- the only way you consider the next page is if you all agree the prosecutor has not met his burden of proof on this count, in other words, you find the defendant not guilty here, okay? *If you can agree, it's a decision on this page*.

"*You don't get to the next page as to this count*. You don't consider it. Okay? Now, we'll assume you deliberate. You consider everything. You believe as a group, 12 of you all, agree the prosecutor did not meet their burden of proof, at that point you sign here, date here. *Then you go to the next page. You do not get to this page if you cannot agree on the first page*. If you find the defendant guilty on the first page, you don't get to the second page. There's no reason to go there.

"Now, *if you do get to the second page, you do consider both of these options again*. In other words, you sit down, you deliberate, and you discuss it. If you all agree at this point the prosecutor has not met their burden of proof, again, you would sign here. If you do believe the

prosecutor has met their burden of proof -- if you cannot agree on this one, but you found not guilty on the first one or the lesser-included offense, you don't put anything there.

"But if you can reach an agreement, you attempt to reach an agreement, either guilty or not guilty based on the burden of proof, you would sign either one. Is that making a bit more sense to you? I don't mean to be rude to you. Unless you see it played out, it makes sense. Again, go to Count 2. It doesn't have a lesser-included offense.

"You decide this case and you attempt to reach a decision. If you sit down and agree and consider all the evidence involved in this case, and the prosecutor has met their burden of proof, you would simply sign here. If you all get together, find the evidence is not supported beyond that burden of proof, then you would sign here. If you can't reach a decision, you leave it alone.

"The last count is the same as the first. The same situation, different date, different situation, different facts applied to different dates but, again, you work out what happened. If you can reach a decision of guilty based on the fact that the prosecutor, given all the evidence, you deliberated, discussed it, has met that burden of proof as to Count 3, you sign here and you stop.

"If you get here, and you can't agree on a decision as to this count, you stop. If you do reach a decision, you believe that the prosecutor has not met that burden of proof, you would sign here. *The only way you get to the last page* is if you agree not guilty is [sic] this count, then you consider this lesser-included offense, which is possession only not for sale as in the first case.

"Again, if you do reach a decision whether guilt or innocence -- not innocent, not guilty or guilty based on the burden of proof, you sign either place. If you don't reach a decision on that one, you leave it blank...." (Italics added.)

Defense counsel did not object to the court's comments quoted above.

## DISCUSSION

"[*People v. Kurtzman* (1988) 46 Cal.3d 322] established that the jury may deliberate on the greater and lesser included offenses in whatever order it chooses, but that it must acquit the defendant of the greater offense before returning a verdict on the

6

lesser offense.  (*Id*. at p. 333.)  In this manner, when the jury renders its verdict on the lesser included offense, it will also have *expressly* determined that the accused is not guilty of the greater offense."  (*People v. Fields* (1996) 13 Cal.4th 289, 309.)

Berrigan contends the court committed *Kurtzman* error because through the instruction quoted above it instructed the jury "not to even consider the lesser charge (of simple possession), unless [he] was found not guilty of possession for sale."  He further contends he did not forfeit this issue by his failure to object to the instruction at issue in the trial court because the instruction resulted in the jury not considering a lesser charge and thus deprived him of a substantial right.  (*People v. Carey* (2007) 41 Cal.4th 109, 129 [notwithstanding defendant's failure to object, claim is cognizable on appeal to the extent it implicates defendant's substantial rights].)  We reject these contentions.

The court charged the jury in the language of CALCRIM 3517 as follows:

> "If all of you find that the defendant is not guilty of a greater crime, you may find him guilty of a lesser crime if you are convinced beyond a reasonable doubt that the defendant is guilty of that lesser crime.  A defendant may not be convicted of both a greater and lesser crime for the same conduct.  [¶] … [¶]

> "Now I will explain to you which crimes are affected by this instruction:  [¶]  Possession of a controlled substance is a lesser crime of possession of a controlled substance for the purpose of sale charged in Counts 1 and 3.

> "*It's up to you to decide the order in which you consider each crime and the relevant evidence, but I can accept a verdict of guilty of a lesser crime only if you have found the defendant not guilty of the corresponding greater crime*."  [Italics added.]

In counts 1 and 3 the jury had the option of convicting Berrigan of possession for sale of methamphetamine or the lesser included offense of simple possession of methamphetamine.  They were also provided with verdict forms for each offense in each count.  The instruction at issue explained to the jury the following with respect to filling out the verdict forms for counts 1 and 3.  If they unanimously agreed that in counts 1 and

7

that Berrigan was guilty of possession for sale or if they did not unanimously acquit him of that offense, they would not have to fill out the verdict form for the lesser included offense of simple possession. If they unanimously agreed that Berrigan was not guilty of possession for sale, then they would have to fill out the appropriate portion of the verdict form for simple possession if they unanimously agreed that he was guilty or not guilty. However, if the jury could not unanimously agree whether he was guilty or not guilty on the greater or lesser offense in each count, then they would not fill out either form. Although the instruction on filling out the verdict forms was at times confusing, Berrigan does not cite any evidence in the record that supports his claim that it caused the jury to not follow the language quoted above from CALCRIM No. 3517.

Furthermore, "[a] defendant is entitled to instructions on lesser included offenses only if some basis exists, 'other than an unexplainable rejection of prosecution evidence, on which the jury could find the offense to be less than that charged.' [Citations.] '[I]f there is no proof, other than an unexplainable rejection of the prosecution's evidence, that the offense was less than that charged, such instructions shall not be given.' " (*People v. Walker* (2015) 237 Cal.App.4th 111, 117.)

Defense counsel did not provide any evidence to rebut the overwhelming amount of evidence the People presented that Berrigan was guilty of the two counts of possession for sale of methamphetamine he was charged with. Further, during closing argument, defense counsel essentially argued only that the People did not prove all the elements of the charged offense, i.e., that there were "just too many holes in [the People's] case" to find Berrigan guilty beyond a reasonable doubt. Thus, Berrigan was not entitled to an instruction on the lesser included offense of simple possession because there was no basis in the record for instructing the jury on that offense. Since Berrigan was not entitled to an instruction on simple possession, Berrigan could not have been deprived of a substantial right by the court's failure to charge the jury that they could first consider an offense that he was not entitled to have the jury consider. Thus we conclude that

8

Berrigan forfeited his right to challenge the instruction at issue on appeal and that, in any event, the court did not commit *Kurtzman* error.[1]

Moreover, even if *Kurtzman* error occurred, it was harmless. The error Berrigan complains of is akin to the trial court failing to instruct on the lesser related offense of simple possession of methamphetamine. " '[T]he failure to instruct sua sponte on a lesser included offense in a noncapital case is, at most, an error of California law alone, and is thus subject only to state standards of reversibility.' [Citation.] Under the state standard, 'such misdirection of the jury is not subject to reversal unless an examination of the entire record establishes a reasonable probability that the error affected the outcome.' " (*People v. Campbell* (2015) 233 Cal.App.4th 148, 165.)

As discussed above, Berrigan could not have been prejudiced by the failure to charge the jury with an instruction on the lesser included offense of simple possession because the evidence did not warrant an instruction on that offense. Further, the evidence of Berrigan's guilt was overwhelming. Detective Van Riddle relied on several circumstances, including Berrigan's admission that he sometimes sold methamphetamine "to make ends meet," to conclude that Berrigan possessed for sale each of the two quantities of methamphetamine found in his possession. Berrigan did not provide any evidence in the trial court to rebut this testimony. Instead, on appeal he attempts to demonstrate that he was prejudiced by the alleged instructional error by individually analyzing and discounting the significance of each circumstance Detective Van Riddle

---

[1] Alternatively, Berrigan contends he was denied the effective assistance of counsel by defense counsel's failure to preserve this issue by objecting to the court's instruction. To prove he was denied the effective assistance of counsel, Berrigan has to show that defense counsel's representation was deficient and that it resulted in prejudice. (*Strickland v. Washington* (1984) 466 U.S. 668, 687-688.) However, since we concluded above that the court did not commit *Kurtzman* error and we conclude, *post*, that Berrigan did not suffer any prejudice from the alleged instructional error, we also reject Berrigan's ineffective assistance of counsel claim.

relied on to conclude Berrigan possessed for sale each of the two quantities of methamphetamine found in his possession. Detective Van Riddle, however, relied on the cumulative significance of all these circumstances to support his opinion that each of the two quantities of methamphetamine found in Berrigan's possession were possessed for sale. Since Berrigan's piecemeal analysis does not address the cumulative significance of these circumstances, it does nothing to impeach Detective Van Riddle's opinion, particularly in light of Berrigan's failure to present any evidence to rebut the People's case. Therefore, since the evidence of Berrigan's guilt on counts 1 and 3 was overwhelming and unrebutted, if instructional error occurred, it was harmless.

## DISPOSITION

The judgment is affirmed.